Neva SMITH, Plaintiff,

v.

**TRAVELERS MORTGAGE SERVICES, et al., Defendants.**

Civ. A. No. 88–3288.

United States District Court,
D. New Jersey.

Nov. 23, 1988.

Edward S. Wardell, Frederick J. Bosch, Baskin Flaherty Elliott & Mannino, P.C., Philadelphia, Pa., for plaintiff.

George G. O'Brien, Jerome A. Hoffman, Diane Siegel Danoff, Dechert Price & Rhoads, Princeton, N.J., for defendants Travelers Mortg. Services, Inc. and D'Ambrose.

Gary J. Lesneski, Archer & Greiner, Haddonfield, N.J., for defendant Moran.

## OPINION

RODRIGUEZ, District Judge.

This matter comes before the court on a motion by plaintiff for a preliminary injunction pursuant to the New Jersey Conscientious Employee Protection Act, a recently enacted statute. Plaintiff seeks to enjoin defendants from discharging plaintiff from her position as Assistant Vice President for Human Resources. In her com-

plaint, plaintiff alleges that she was discharged from her position for filing a charge with the Equal Employment Opportunity Commission ("EEOC"). This case presents a novel issue for this court in determining the boundaries of the injunctive remedy provided in the Conscientious Employee Protection Act ("CEPA"). Specifically, this court must decide whether an injunction under CEPA is applicable to a retaliation discharge claim for filing an individual EEOC claim or whether the statute's protection is aimed at whistleblowing activities.

For the reasons stated herein, plaintiff is not entitled to an injunction under CEPA. The court comes to this conclusion based on two grounds: First, a study of the CEPA legislative history as well as relevant case law demonstrates that the act protects whistleblowing activities; thus, this court holds that plaintiff's individual claim does not fall within the CEPA protections. Second, even if the CEPA statute envisions protection for an individual discrimination claim, plaintiff has failed to demonstrate the requisite irreparable harm for an injunction to issue.

## I.

Plaintiff Neva Smith began her employment with defendant Travelers Mortgage Services, Inc. ("TMS") in April 1984 as Director of Personnel. In June 1985, she was promoted to the position of Assistant Vice President for Human Resources. On June 18, 1987, plaintiff filed a charge with the EEOC alleging discrimination by TMS when TMS failed to award her the position of Vice President of Human Resources. On March 10, 1988 while on maternity leave, plaintiff received notice that she would be terminated from her employment at the end of her leave.

On July 27, 1988, plaintiff instituted this action alleging she was terminated from her position in retaliation for filing the EEOC charge. In addition to TMS, plaintiff names as defendants TMS officers James T. Moran and Michael D'Ambrose. Plaintiff also alleged that she was fired for refusing to participate in the termination of a former TMS employee, who allegedly refused to perjure herself at the request of TMS in a proceeding involving another employee. In her complaint, plaintiff alleges that defendants engaged in sexual harassment and a pattern of unlawful employment discrimination against plaintiff on the basis of her sex. Specifically, plaintiff brings the following claims: Count I—sex discrimination in violation of Title VII of the Civil Rights Act of 1964; Count II—retaliatory discharge under Title VII for terminating her employment for filing a charge with the EEOC; Count III—unlawful retaliatory action under CEPA; Count IV—equal pay violation under Title VII; Count V—conspiracy to interfere with civil rights; Count VI—wrongful discharge; Count VII—intentional infliction of emotional distress; and Count VIII—negligent infliction of emotional distress.

In September 1988, plaintiff moved before this court for a preliminary injunction under Count III against TMS to enjoin her discharge and for an order to reinstate plaintiff to the position of Assistant Vice President of Human Resources with full fringe benefits and seniority rights. Plaintiff asserts that she is entitled to this relief pursuant to CEPA and that she meets the requisite standards for injunctive relief. Defendants contend that plaintiff is not entitled to an injunction because the alleged retaliation based upon filing an EEOC charge is not protected under CEPA. In addition, defendants contend that even if relief for such charge was envisioned by CEPA, plaintiff has failed to meet the standards for a preliminary injunction. This court heard oral argument on September 22, 1988 and then requested supplemental briefs on the issue of whether filing an EEOC charge is within the protection of CEPA.

## II.

The New Jersey Conscientious Protection Act, effective in September 1986, prohibits employer retaliatory discharge. Specifically, the statute forbids an employer from taking retaliatory action against an employ-

ee because the employee does any of the following:

    a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law;

    b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer; or

    c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

      (1) is in violation of a law, or a rule or regulation promulgated pursuant to law;

      (2) is fraudulent or criminal; or

      (3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare.

N.J.STAT.ANN. § 34:19–3 (West 1988).

Plaintiff contends that pursuant to § 34:19–5(a) and (b) of the statute, this court may issue an injunction to restrain defendant from violating the act and order plaintiff's reinstatement.[1]

Specifically, plaintiff's reasoning is as follows: The EEOC is a federal regulatory and administrative agency which falls under the "public body" definition of CEPA.[2]

Plaintiff's filing of a charge with the EEOC is a "disclosure" under CEPA of "an activity, policy or practice of the employer that the employee reasonably believes is in violation of law." *See* N.J.STAT.ANN § 34:19–3(a). In addition, by filing the EEOC claim, plaintiff provided information to a "public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer." *See* N.J.STAT.ANN. § 34:19–3(b). Thus, plaintiff asserts this court may issue an injunction pursuant to the Act.

In addition to the statutory language argument, plaintiff cites two cases to support her claim that CEPA covers her claims. First, plaintiff relies on *Lepore v. National Tool & Manufacturing Co.*, 224 N.J.Super. 463, 540 A.2d 1296 (App.Div.), *certif. granted*, 111 N.J. 642, 546 A.2d 553 (1988) as support that the New Jersey legislature intended the CEPA statute to be a "reaffirmation of this state's repugnance to an employer's retaliation against an employee who has done nothing more than assert statutory rights and protections." *Id.* at 470, 540 A.2d at 1299. Second, plaintiff cites *Velantzas v. Colgate–Palmolive Co.*, 109 N.J. 189, 536 A.2d 237 (1988) which concluded that the public policy of New Jersey should "protect those who are in good faith pursuing information relevant to a discriminatory discharge." 109 N.J. at 192, 536 A.2d at 238. Plaintiff then argues

---

1. The relevant section provides that upon a violation of any provisions of the act, an aggrieved or former employee may institute a civil action for the following relief which the court may order:

    a. An injunction to restrain continued violation of this act;

    b. The reinstatement of the employee to the same position held before the retaliatory action, or to an equivalent position;

    c. The reinstatement of full fringe benefits and seniority rights;

    d. The compensation for lost wages, benefits and other remuneration;

    e. The payment by the employer of reasonable costs, and attorney's fees;

    f. Punitive damages; or

    g. An assessment of a civil fine of not more than $1,000.00 for the first violation of the act and not more than $5,000.00 for each subsequent violation. . . .

N.J.STAT.ANN. § 34:19–5.

2. The statute defines public body as:

    (1) the United States Congress, and State legislature, or any popularly-elected local governmental body, or any member or employee thereof;

    (2) any federal, State, or local judiciary, or any member or employee thereof, or any grand or petit jury;

    (3) any federal, State or local regulatory, administrative, or public agency or authority, or instrumentality thereof;

    (4) any federal, State, or local law enforcement agency, prosecutorial office, or police or peace officer;

    (5) any federal, State, or local department of an executive branch of government; or

    (6) any division, board, bureau, office, committee or commission of any of the public bodies described in the above paragraphs of this subsection.

the following syllogism: (1) CEPA is a codification of the common law tort of wrongful discharge for retaliatory action taken by an employer against an employee for reporting violations of state and federal law; and (2) a common law tort of wrongful retaliation exists for an employee pursuing a gender discrimination claim; therefore (3) CEPA protects an employee from employer retaliation for filing a gender discrimination claim. Supplemental Brief for Plaintiff at 3.

Defendants contend that the filing of an individual charge is not within the parameters of CEPA's protection; instead, defendants assert that CEPA protects "whistleblowing" activities such as testifying or reporting about such harms as public health violations.

■ After careful examination of the submissions of the parties, this court holds that the filing of an individual EEOC claim does not fall within the protections of CEPA. It is clear that the main thrust for enactment of CEPA was to protect whistleblowing activities. When enacted, the statute was dubbed as a "whistle blower bill." *See* News Release from the Office of the Governor, September 8, 1986. In fact, this court has recognized that CEPA expresses the state's public policy in protecting "whistle-blowers." *See Smith v. Ebasco Constructors, Inc.,* 1988 U.S.Dist. LEXIS 3964, 1988 WL 44143 (D.N.J.1988). Thus, the court rejects plaintiff's statutory language argument. Filing an EEOC claim does not constitute a disclosure under the Act nor does such a charge fall under the "providing information" section of the statute.

In addition, individual gender discrimination claims are protected by Title VII and thus most likely were not intended by the state legislature to be protected by CEPA.

Under plaintiff's reasoning, every person filing an individual EEOC claim would be entitled to be reinstated under CEPA. Although New Jersey has a strong public policy in protecting employees, this court does not believe that the state's policy is furthered by allowing injunctive relief on the mere filing of an EEOC claim.[3]

Finally, the court is reluctant to enlarge a state statutory scheme without clear guidance from the state legislature and courts. The cases cited by plaintiff for support of its motion for an injunction are inapposite. While it is true that *Lepore* demonstrates that the Act "codifies the right of all employees to pursue a state tort claim for action taken in retaliation for reporting violations of law to federal or state authorities or both," 224 N.J.Super. at 470, 540 A.2d at 1299, plaintiff in *Lepore* was discharged in retaliation for reporting workplace safety violations to a federal agency. Such action demonstrates the type of whistleblowing activity which this court believes the legislature intended to protect through enactment of CEPA.[4] *See also Potter v. Village Bank of New Jersey,* 225 N.J.Super. 547, 543 A.2d 80 (App.Div. 1988) (discussing CEPA in context of employee who blew the whistle on bank directors suspected of criminal violations, *i.e.,* laundering money from illegal activities). In addition, while the *Velantzas* case supports plaintiff's proposition that retaliatory discharge violates the state's public policy, it provides no support that individual claims fall under CEPA.

In conclusion, the court finds that the alleged discharge of an employee for filing an individual claim with the EEOC is not within the activities protected by CEPA. Thus, plaintiff has failed to meet her burden in moving for a preliminary injunction.

**3.** The court notes that defendants argue that if plaintiff had a cognizable claim under CEPA properly remedied by an injunction, such claim would be preempted by Title VII. Because the court holds that plaintiff is not entitled to a preliminary injunction under CEPA and has not demonstrated irreparable harm, the court need not address the preemption argument.

**4.** In addition, the *Lepore* court further stated that upon a violation of CEPA, "an employee or former employee may file a tort action and *may be* entitled to an injunction, reinstatement, compensation for lost wages...." 224 N.J.Super. at 470, 540 A.2d at 1299 (emphasis added). Thus, it is clear that an injunction, even in a whistleblowing case, is a discretionary action by the court.

### III.

Because CEPA is a relatively new statute with sparse case law, the court has decided to consider in the alternative whether plaintiff would be entitled to an injunction if the Act protects employees fired in retaliation for filing discrimination claims. In order to support a motion for preliminary injunction, the moving party must demonstrate that (1) she will suffer irreparable harm if the relief is not granted and (2) that there is a reasonable probability of success on the merits. *Continental Group, Inc. v. Amoco Chem. Corp.*, 614 F.2d 351, 356–57 (3d Cir.1980). In addition, the court must "weigh the possibility of harm to the nonmoving party as well as to any other interested persons and, when relevant, harm to the public." *Id.* at 357. Finally, in determining whether plaintiff has suffered irreparable harm or whether plaintiff may have a reasonable probability of success on the merits, this court must examine New Jersey law. *Id.* at 357 n. 10 ("state law would define what injury is cognizable and would control any assessment of the moving party's probability of success on the merits").

■ An injunction will not be granted unless the moving party demonstrates irreparable injury that cannot be adequately compensated by damages. *ECRI v. McGraw–Hill, Inc.*, 809 F.2d 223, 226 (3rd Cir.1987). A plaintiff must establish more than a risk of irreparable harm. *Id.* It is plaintiff's burden of proving a "clear showing of immediate irreparable injury." *Id.* (quoting *Continental Group*, 614 F.2d at 359).

Plaintiff makes a two-fold argument with respect to her showing of irreparable harm. First, plaintiff contends that she has suffered irreparable harm. In addition, plaintiff argues that under CEPA irreparable harm can be shown by injury to third parties based on a chilling effect of retaliatory activity. Due to the recent enactment of the statute, plaintiff offers no direct case law to support her arguments under

CEPA. Thus, the court will examine analogous actions in determining the appropriate showing of irreparable harm. The case law under wrongful discharge and Title VII cases provides an appropriate mechanism to evaluate plaintiff's claims.

■ It is clear that under the Supreme Court's holding in *Sampson v. Murray*, a plaintiff in a wrongful discharge must allege more than a loss of income and damage of reputation to meet the requirement of irreparable harm. 415 U.S. 61, 91–92, 94 S.Ct. 937, 953–954, 39 L.Ed.2d 166 (1974). In addition, the Supreme Court noted that "insufficiency of savings or difficulties in immediately obtaining other employment" will not support a finding of irreparable injury. *Id.* at 92 n. 68, 94 S.Ct. at 953 n. 68. Similarly, in *Moteles v. University of Pennsylvania*, the Third Circuit held that a showing of irreparable injury was a prerequisite for preliminary injunctive relief under Title VII. 730 F.2d 913, 918 (3d Cir.), *cert. denied*, 469 U.S. 855, 105 S.Ct. 179, 83 L.Ed.2d 114 (1984). Applying the rationale of these cases to the issue at hand, this court holds that under CEPA a plaintiff must make the same showing of irreparable harm in order to support the issuance of a preliminary injunction. This court finds that plaintiff has made no affirmative showing of such injury.[5]

Plaintiff, however, also claims that her firing caused irreparable harm to third parties. She argues that by virtue of New Jersey's "deep commitment to the protection of its employee citizenry and its repugnance to employer retaliation, and by virtue of the devastating effect the denial of the instant motion would have on Smith, other TMS employees and the public interest, there is sufficient irreparable harm to mandate the issuance of a preliminary injunction." Supplemental Brief for Plaintiff at 9–10. Plaintiff urges the court to apply under CEPA the approach adopted by the Ninth Circuit in *Garcia v. Lawn*, 805 F.2d 1400 (9th Cir.1986). In *Garcia*, the court held that a retaliatory action's deleterious

---

**5.** At the preliminary injunction hearing, this court ruled that plaintiff had not sustained ir-

reparable harm under Title VII.

effect on the exercise of Title VII rights of others can constitute irreparable harm in a Title VII action. 805 F.2d at 1405. *See also Holt v. Continental Group, Inc.,* 708 F.2d 87, 91 (2d Cir.1983), *cert. denied,* 465 U.S. 1030, 104 S.Ct. 1294, 79 L.Ed.2d 695 (1984) (recognizing that the "risks that other employees may be deterred from protecting their rights ... or providing testimony" may constitute irreparable harm).[6]

■ This court does not accept plaintiff's assertion that there is a presumption of irreparable injury in an action by a plaintiff alleging retaliatory discharge under CEPA. In addition, under the third-party chilling approach, this court agrees that to support such an argument, affirmative evidence must be introduced. *See Holt,* 708 F.2d at 91. Because plaintiff failed to make any affirmative showing of third-party chilling, her motion must be denied.

### IV.

This court holds that plaintiff's individual claim does not fall under the protections of the Conscientious Employee Protection Act. In the alternative, this court rules that if plaintiff's action did fall under CEPA, plaintiff has failed to meet her burden in demonstrating the requisite irreparable harm. Accordingly, plaintiff's motion for a preliminary injunction is denied.

An appropriate order will be entered.

---

**6.** The Third Circuit recently held that evidence of a discharge of a Title VII plaintiff "is relevant evidence tending to support a claim that potential witnesses will be intimidated from cooperating ... such evidence (however) will not alone support a finding that intimidation has occurred or is imminent." *Marxe v. Jackson,* 833 F.2d 1121, 1129 (3d Cir.1987). The *Marxe* court, however, did not express any view with respect to third-party chilling of potential claimants.