**Venessa SANDOM, Plaintiff,**

v.

**TRAVELERS MORTGAGE SERVICES, INC., James M. Keane, Michael D'Ambrose, Alan Markowitz, Joseph Bryant, David Bailey, Vincent Caruso, John Doe, Richard Roe, and all others acting in concert with them or acting in their aid or their behalf, Defendants.**

**Civ. A. No. 90–3207 (MHC).**

United States District Court,
D. New Jersey.

Dec. 20, 1990.

Stradley, Ronon, Stevens & Young by John J. Murphy, III, Princeton, N.J., and Stradley, Ronon, Stevens & Young by Frederick J. Bosch, Philadelphia, Pa., for plaintiff.

Dechert Price & Rhoads by Sharon Katz Rimland, Princeton, N.J., and Dechert Price & Rhoads by Jerome A. Hoffman, Philadelphia, Pa., for defendants.

## OPINION

COHEN, Senior District Judge:

Presently before the court, in an action instituted by the plaintiff, Vanessa Sandom, alleging sexual discrimination and sexual harassment against the defendant, Travelers Mortgage Services, Inc. (TMS), and the individual defendants, James M. Keane, Michael D'Ambrose, Alan Markowitz, Joseph Bryant, David Bailey and Vincent Caruso, all members of TMS's Executive Committee and supervisors, is a motion by defendants to dismiss the plaintiff's complaint. For the reasons which follow, the defendants' motion shall be granted in part and denied in part.

## I. BACKGROUND

Sandom was formerly Vice President of Travelers Relocation Mortgage Company (TRMC), a division of defendant, TMS. Sandom was hired by TMS in June of 1988 as a Business Director and was promoted to Vice President in September of that year. Plaintiff alleges that, because she is a female, she did not receive the title, salary or benefits of the former holder of her position. Furthermore, she contends that she was paid less than employees in comparable positions, most of whom were male, and, unlike those employees, she was not paid a sales commission.

On February 1, 1989, Sandom informed defendant, James M. Keane, her immediate supervisor, that she was pregnant. Thereafter, plaintiff asserts that she was subjected to sexual harassment. For example, she contends that certain TMS employees made derogatory comments regarding her physical appearance, and that she was subjected to numerous lewd remarks.[1] Additionally, Keane relieved Sandom of her responsibility for representing TRMC at executive meetings, and gave it to male subordinates. Sandom temporarily left employment for maternity leave in August, 1989, and maintains that when she returned to work, on November 1, 1989, she discovered that many of her responsibilities had been eliminated. Additionally, she learned that several subordinates would no longer report to her, as heretofore required. Keane informed her that the changes were due to a reorganization.

On February 28, 1990, Sandom filed a charge of sex discrimination[2] with the federal Equal Employment Opportunity Commission (EEOC). The charge detailed most of the aforesaid events, including her lower salary and diminished job responsibilities, but excluded any mention of sexual harassment. Shortly after filing the charge, on April 6, 1990, Sandom was terminated. She avers that defendant D'Ambrose, Senior Vice President of Human Services, informed her that the reason for her discharge was that the Executive Committee (defendants Keane, D'Ambrose, Markowitz, Bryant, Bailey, and Caruso) had lost confidence in her. Sandom then filed a second EEOC charge on April 10, 1990, alleging that her termination was in retaliation for her filing the February 28 EEOC charge. Following the receipt of a Notice

---

1. In her complaint, Sandom avers that she was subjected to a day long meeting during which the males present made "unrelenting and offensive claims that the bar graphs in the report which was used at the meeting were actually measurements of penis length." Amended Complaint at 6.

2. We use the terms sex discrimination and gender-based discrimination synonymously throughout this opinion.

of Right to Sue from the EEOC, Sandom filed a complaint in the instant action, consisting of four counts.

The plaintiff first asserts a claim for unlawful relatiatory action, pursuant to the New Jersey Conscientious Employee Protection Act, *N.J.Stat.Ann.* § 34:19–1 *et seq.* (West 1988) (CEPA) (Count I). She also alleges violations under Title VII for sexual harassment (Count II) and retaliatory discharge (Count III), and the federal Equal Pay Act, 29 U.S.C. § 206(d)(1) (Count IV).[3] Defendants move to dismiss Count I in light of *Smith v. Travelers Mortgage Services, Inc.,* 699 F.Supp. 1080 (D.N.J.1988), which held that a discharge in retaliation for filing an EEOC charge is not actionable under CEPA. Additionally, defendants contend that the EEOC charge did not raise a claim of sexual harassment, and failed to include the individual defendants in the EEOC charge, and thus they move to dismiss Count II in its entirety and Count III regarding the individual defendants. Finally, the defendants move to dismiss Count IV as to the individual defendants on the grounds that plaintiff has not alleged that these individuals are employers as that term is used within the Equal Pay Act and, alternatively, that plaintiff cannot seek relief from both defendant TMS and the individual defendants under that Act.

## II. DISCUSSION

■ This motion is before the court as a motion to dismiss, pursuant to R. 12(b)(6), for failure to state a claim upon which relief can be granted. In ruling on such a motion, a cause of action should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of her claim which would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 101, 2 L.Ed.2d 80 (1957). We must consider the plaintiff's factual

allegations as true, giving the plaintiff the benefit of all reasonable inferences. *Id.*

### A. Count I—New Jersey Conscientious Employee Protection Act (CEPA)

■ CEPA was enacted in 1986 as New Jersey's "whistleblower" statute. The statute provides, in part:

An employer shall not take any retaliatory action against an employee because the employee does any of the following:

a. Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer or another employer, with whom there is a business relationship, that the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law;

b. Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law by the employer or another employer, with whom there is a business relationship; or

c. Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes:

(1) is in violation of a law, or a rule or regulation promulgated pursuant to law;

(2) is fraudulent or criminal; or

(3) is incompatible with a clear mandate of public policy concerning the public health, safety or welfare or protection of the environment.

*N.J.Stat.Ann.* § 34:19–3 (West 1988 & Supp.1990). "Public body" is defined to include:

(3) any federal, State, or local regulatory, administrative, or public agency or authority, or instrumentality thereof; or

. . . .

---

**3.** The EPA is an amendment to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* The applicable provision of the EPA reads:

No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees

in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions.

*Id.* § 206(d)(1).

**1244**

(5) any federal, State or local department of an executive branch of government; or

(6) any division, board, bureau, office, committee or commission of any of the public bodies described in the above paragraphs of this subsection.

*Id.* § 34:19–2(c).

Assuming plaintiff was, in fact, discharged in retaliation for filing the EEOC charge, there can be no question that her claim falls within the plain language of CEPA. Plaintiff contends that TMS took retaliatory action for her disclosure of alleged gender-based discrimination, a practice in violation of law,[4] to the EEOC, an entity clearly within the definition of "public body" as that term is defined in CEPA.

Nonetheless, in *Smith v. Travelers Mortgage Services, Inc.*, 699 F.Supp. 1080 (D.N.J.1988), the court agreed with the defendant's assessment that "the filing of an individual charge is not within the parameters of CEPA's protection ... [since] CEPA protects 'whistleblowing' activities such as testifying or reporting about such harms as public violations." 699 F.Supp. at 1083. *Travelers* is all but identical to the instant case. The plaintiff in that case was also a female employee of TMS, defendant in the instant case. She commenced her employment as a Director of Personnel in April, 1984 and was promoted to Assistant Vice President of Human Resources in June, 1985. Like the plaintiff in the instant case, the plaintiff in *Travelers* filed a charge with the EEOC alleging sex discrimination. She also took maternity leave (it was during this period that she was terminated). The plaintiff in *Travelers*, as in the instant case, alleged that she was terminated in retaliation for filing the EEOC charge.

Although there is a dearth of legislative history and case law under CEPA and, because we conclude that the New Jersey courts would construe CEPA to include retaliatory discharge claims for filing a charge with the EEOC, we respectfully disagree with the holding in *Travelers*. That court based its decision on several factors. First, the court rejected plaintiff's statutory language argument on the ground that CEPA was intended as a "whistleblower" bill. *Id.* (citing News Release from the Office of the Governor, September 8, 1986[5] and *Smith v. Ebasco Constructors*, 1988 U.S.Dist. LEXIS 3964, 1988 WL 44143 (D.N.J.1988)). We find nothing restrictive about the term "whistle-blower" as applied to the case at bar. In *Ebasco Constructors*, the plaintiff alleged that he was discharged in retaliation for reporting cost overruns and schedule delays in connection with a publicly funded project. The court held that the plaintiff-employee's disclosures did not implicate CEPA since they amounted merely to "negative, unpopular findings." This is distinguishable, however, from reports of activity which is unlawful or against clearly expressed public policy, such as sex-discrimination.

Moreover, *Black's Law Dictionary* 1596 (6th ed. 1990) defines "whistle-blower acts" as "[f]ederal and state statutes designed to protect employees from retaliation for a disclosure of an employer's misconduct." A "whistle blower" is defined as "[a]n employee who refuses to engage in and/or reports illegal or wrongful activities of his employer or fellow employees." *Id.* An act (such as CEPA) which proscribes retaliatory conduct against "whistle-blowing" employees is a "whistle-blower act," just as an employee who discloses unlawful sex discrimination is certainly a "whistle-blower." Neither conclusion, however, has any effect on plaintiff's case. As discussed herein, plaintiff's claim falls within both the plain language and spirit of CEPA.

Second, the court in *Travelers* stated:

In addition, individual gender discrimination claims are protected by Title VII and thus most likely were not intended

---

**4.** 42 U.S.C. § 2000e–2 provides that "[i]t shall be an unlawful employment practice for an employer to ... discharge any individual, or otherwise to discriminate against any individual with respect to his compensation ..., because of such individual's ... sex...." *Id.*

**5.** Plaintiff maintains that it was improper for the *Travelers* court to rely on a Governor's news release. *See Neveroski v. Blair,* 141 N.J.Super. 365, 377 n. 3, 358 A.2d 473 (App.Div.1976). We need not address this issue, however, since we base our conclusion on other grounds.

by the state legislature to be protected by CEPA. Under plaintiff's reasoning, every person filing an individual EEOC claim would be entitled to be reinstated under CEPA. Although New Jersey has a strong public policy in protecting employees, this court does not believe that the state's policy is furthered by allowing injunctive relief on the mere filing of an EEOC claim.

*Travelers*, 699 F.Supp. at 1083. The existence of a federal cause of action does not, however, foreclose the possibility of concurrent and complementary state law. Although individual discrimination claims (and, for that matter, retaliation claims) are protected by Title VII, remedies under that act are limited to "equitable monetary relief" such as lost wages and work benefits. *Sherman v. Burke Contracting, Inc.*, 891 F.2d 1527, 1535 (11th Cir.1990). In contrast, a plaintiff under CEPA may, additionally, seek injunctive relief, compensatory and punitive damages, and attorney's fees. *N.J.Stat.Ann.* § 34:19–5. The New Jersey legislature may properly expand upon plaintiff's remedies for claims originally cognizable under federal law.

Moreover, we are not troubled over the possibility of opening the proverbial floodgates of litigation since it is not true that "every person filing an individual EEOC claim would be entitled to be reinstated under CEPA." 699 F.Supp. at 1083. Only those employees who have been discharged in retaliation for exercising their right to file an EEOC claim for alleged illegal employment practices will have a cause of action. Such employees had a cause of action for retaliatory discharge under federal law even before *Travelers*, and thus, our conclusion does not in any way increase the number of claims which could be asserted against employers. *See, e.g., Davis v. State Univ. of New York*, 802 F.2d 638 (2d Cir.1986) (private right of action exists under 42 U.S.C. § 2000e–3 for ex-employee discharged in retaliation for filing an EEOC claim); *see also, Velantzas v. Colgate–Palmolive Co.*, 109 N.J. 189, 193 n. 1, 536 A.2d 237 (1988).

Furthermore, the court in *Travelers* was reluctant to enlarge a state statutory scheme without clear guidance from the state legislature and courts. The cases cited by plaintiff for support of its motion for an injunction are inapposite. While it is true that *Lepore [v. National Tool & Manufacturing Co.*, 224 N.J.Super. 463, 540 A.2d 1296 (App.Div.1988) *aff'd*, 115 N.J. 226, 557 A.2d 1371 (1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 366, 107 L.Ed.2d 353 (1989) ] demonstrates that the Act 'codifies the right of all employees to pursue a state tort claim for action taken in retaliation for reporting violations of law to federal or state authorities or both,' 224 N.J.Super. at 470 [540 A.2d 1296], plaintiff in *Lepore* was discharged in retaliation for reporting workplace safety violations to a federal agency. Such action demonstrates the type of whistleblowing activity which this court believes the legislature intended to protect through enactment of CEPA.

*Travelers*, 699 F.Supp. at 1083.

In the final analysis, we fail to discern a distinction between the "whistleblowing" activity in cases such as *Lepore*, and that of the plaintiff in the instant case, such that CEPA should protect the former, but exclude from its protection the latter. Injury is inflicted upon victims in a gender-based discriminatory workplace just as surely as it is in an unsafe workplace, albeit the "injury" is economic and psychological rather than physical. *Compare Fuchilla v. Layman*, 109 N.J. 319, 333, 537 A.2d 652 (1988), *cert. denied sub nom., University of Medicine & Dentistry v. Fuchilla*, 488 U.S. 826, 109 S.Ct. 75, 102 L.Ed.2d 51 (1988) (citing cases which have held that sexual discrimination is injurious and tortious). As the New Jersey Supreme Court recently stated, in *Fuchilla*, "[t]he day is long past when any employee need endure discrimination because of his or her race, religion, national origin, or gender. Employment discrimination is not just a matter between employer and employee. The public interest in a discrimination-free work place infuses the inquiry." *Id.* 109 N.J. at 334–35, 537 A.2d 652. Indeed, in section 10:5–3 of the New Jersey Law

Against Discrimination, the New Jersey legislature has declared that

practices of discrimination against [New Jersey] inhabitants, because of ... sex ... [is] a matter of concern to the government of the State, and that such discrimination threatens not only the rights and proper privileges of the inhabitants of the State but menaces the institutions and foundations of a free democratic State.... The Legislature further declares its opposition to such practices of discrimination when directed against any person by reason of the ... sex ... of that person ... in order that the economic prosperity and general welfare of the inhabitants of the State may be protected and ensured.

*N.J.Stat.Ann.* § 10:5-3 (West Supp.1990).

Although this statute has not been cited by plaintiff, it expresses legislative findings regarding the public policy of the State of New Jersey. The Law Against Discrimination was enacted as one, but not necessarily the sole, legislative method by which the legislature chose to combat the evils addressed in these findings. We therefore see no reason why we should not look to this statute as guidance as to how the New Jersey legislature views gender-based employment discrimination. *See N.J. Stat.Ann.* § 34:19-8 ("[n]othing in [CEPA] shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law ..."). Moreover, the New Jersey Supreme Court has recently and expressly stated that "[t]he public policy of the State of New Jersey should protect those who are in good faith pursuing information relevant to a [sexual] discrimination charge." *Velanzas*, 109 N.J. at 192, 536 A.2d 237. Thus, allowing plaintiff to maintain an action under CEPA falls squarely within not only the letter of CEPA, but also the public policy of New Jersey as expressed by its legislature and courts.

■ Finally, defendants maintain, in a footnote, that CEPA is preempted by Title VII. It is true, as defendants state, that plaintiff's complaint also sets forth a cause of action under Title VII. This is not enough, however, to establish that Title VII preempts CEPA. On the contrary, Title VII itself provides that "[n]othing in this chapter shall be deemed to exempt or relieve any person from any liability, duty, penalty, or punishment provided by any present or future law of any State ... other than any such law which purports to require or permit the doing of any act which would be an unlawful employment practice under this subchapter." 42 U.S.C. § 2000e-7; *see also, Calif. Federal Savings & Loan Assoc. v. Guerra*, 479 U.S. 272, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). "The narrow scope of preemption available under [Title VII] reflects the importance Congress attached to state antidiscrimination laws in achieving Title VII's goal of equal employment opportunity." *Guerra*, 479 U.S. at 282-83, 107 S.Ct. at 690. It is clear that CEPA is in accord with the goals and provisions of, and consequently is not preempted by, Title VII. Accordingly, Count I of plaintiff's complaint shall not be dismissed, as we find that she has stated a claim under CEPA.

### B. Count II—Sexual Harassment Under Title VII

■ Defendants maintain that the facts underlying Count II of the plaintiff's amended complaint, alleging sexual harassment, are sufficiently distinct from those in the EEOC charges and thus must be raised through administrative channels before being heard by this court. Title VII of the Civil Rights Act of 1964 prohibits discriminatory practices by employers, including discharging an employee because of her sex. *See* 42 U.S.C. § 2000e-2. Before a Title VII claim may be maintained in federal court, however, a charge must be filed against a party with the EEOC. *See Glus v. G.C. Murphy Co.*, 562 F.2d 880, 885 (3d Cir.1977).

■ "The parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398-99 (3d Cir.1976), *cert. denied*, 429 U.S. 1041,

97 S.Ct. 741, 50 L.Ed.2d 753 (1977). *See also Hicks v. A.B.T. Assoc. Inc.*, 572 F.2d 960 (3d Cir.1978). Thus, a subsequent civil action may only encompass forms of discrimination similar or related to those filed in the EEOC charge. *Jenkins v. Blue Cross Mutual Hospital Insurance Inc.*, 538 F.2d 164, 167 (7th Cir.1976), *cert. denied*, 429 U.S. 986, 97 S.Ct. 506, 50 L.Ed.2d 598 (1976) (claim based on discrimination should not be dismissed if contentions in the complaint "grow out of" or are "like or reasonably related to the EEOC charge allegations"); *Torriero v. Olin Corp.*, 684 F.Supp 1165, 1170 (S.D.N.Y.1988); *Flesch v. Eastern Pa. Psychiatric Inst.*, 434 F.Supp. 963, 970 (E.D.Pa.1977).

In several cases, courts have dismissed claims of sexual harassment, which were not included within the original EEOC charge, alleging a different form of sexual discrimination, based on the fact that sexual harassment is distinct from other forms of sexual discrimination. *Torriero, supra,* is closely analogous to the case at bar. In *Torriero,* the plaintiff filed an EEOC charge alleging sexual discrimination with respect to job transfer, promotion and termination. After receiving a Right to Sue notice from the EEOC, the plaintiff filed suit in federal court, adding a sexual harassment claim not referred to in the EEOC charge. The court found that the facts alleging sexual harassment could not be inferred from the allegations in the EEOC charge and would not have been uncovered absent specific allegations in the charge. Thus, the court was prohibited from determining the sexual harassment charge. 684 F.Supp. at 1170.

Similarly, in *Zalewski v. M.A.R.S. Enterprises, Ltd.*, 561 F.Supp. 601 (D.Del.1982), the plaintiff filed an EEOC charge specifically charging sexual discrimination with respect to his employment discharge and discriminatory segregation of employees into management and non-management positions based on sex. However, the plaintiff specifically omitted from the charge an allegation that an offer for job advancement was predicated on performing homosexual favors for the owner of the defendant corporation. The court stated, "[t]his count alleges facts wholly different from the allegations of disparate male-female treatment.... The charge presented to the EEOC and the [new sexual harassment] claim set forth two entirely unrelated and independent charges.... The sole common denominator of the two charges is the fact that the discrimination allegedly involved sex, yet the two sex discrimination claims were in no way 'alike or related.'" 561 F.Supp. at 605 (citing *Price v. John F. Lawhorn Furniture Co.*, 24 Fair.Empl.Prac.Cas. 1506, 1978 WL 53 (N.D.Ala.1978)). *See also Clay v. Quartet Mfg. Co.*, 644 F.Supp. 56, 60 (N.D.Ill.1986) (court suggests that a sexual harassment claim is not reasonably related to a wage discrimination claim).

In general, certain claims of discrimination in the workplace, not filed in the EEOC charge, have been determined not to be similar, nor related, to a form of employment discrimination which was included in the administrative complaint. *See, e.g., Miller v. International Telephone and Telegraph Corp.*, 755 F.2d 20, 25–26 (2d Cir.1985), *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (claim of failure to re-hire is sufficiently distinct from claim in the EEOC charge alleging discriminatory discharge); *Ritzie v. City University of New York*, 703 F.Supp. 271, 278–79 (S.D.N.Y.1989) (administrative complaint filed before state agency, which only detailed instances of alleged discrimination involving another co-worker and within a discrete time period, was not reasonably related to a subsequent claim alleging discriminatory job demotion).

In response to defendants' contentions, plaintiff maintains that, because the EEOC charge alleged sexual discrimination, and because sexual harassment is a form of sexual discrimination, then this court should retain jurisdiction over count II. We disagree. Because a claim of sexual harassment may constitute sexual discrimination does not imply that a charge consisting of facts which purportedly constitute sexual discrimination necessarily includes all forms of sexual discrimination. Plaintiff's reliance on *Meritor Savings Bank,*

*FSB v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986), is misplaced. *Meritor* stands for the proposition that sexual harassment leading to a hostile work environment may constitute a Title VII violation, even absent any economic harm to the complainant. However, nothing in that case suggests a change in general Title VII procedural requirements that a claim of sexual harassment must first be filed with the EEOC in order to give the parties an opportunity to settle the discrimination claim through voluntary compliance outside of litigation. *See Miller*, 755 F.2d at 25–26.

We feel obliged to distinguish cases in which courts have heard claims which were not specifically mentioned in the prior EEOC charge. These claims either arose during the pendency of the EEOC investigation, or were closely related to conduct alleged in the charge (such as a claim of retaliation for filing the charge) or were considered explanations of the original charge. *See, e.g., Molthan v. Temple University*, 778 F.2d 955, 960 (3d Cir.1985) (retaliation claim within scope of prior claim filed in EEOC charge alleging sexual discrimination); *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3d Cir.1984) (claim, in civil suit, that plaintiff was discriminated against because of her involvement with a "Black Caucus" explained the original EEOC charge, alleging racial discrimination in job promotion); *see also, Waiters v. Parsons*, 729 F.2d 233 (3d Cir. 1984); *Ostapowicz*, 541 F.2d at 398–99; *Flesch*, 434 F.Supp. at 970. Unlike these cases, the plaintiff's sexual harassment claim in the instant case (which was not raised in any EEOC charge, nor, apparently, investigated by the EEOC) arises from a set of facts wholly distinct from a contention of sexual discrimination with respect to salaries or job responsibilities. The sexual harassment claim would, most likely, not have arisen out of a reasonable EEOC investigation of the filed claim absent a specific allegation in the charge. Furthermore, the sexual harassment claim is not a claim of retaliation for the earlier filing of an EEOC charge, nor assists in clarifying the earlier complaint.

As in *Torriero* and *Zalewski*, we find that the sexual harassment claim is sufficiently distinct from the forms of sexual discrimination claims alleged in the EEOC charges and, therefore, requires a dismissal of that claim, until administrative procedures have been exhausted.

### C. Count III—Alleged Failure to Name the Individual Defendants in the EEOC Charge as a Bar to the Title VII Claims

■ As noted *supra*, a claim of sexual discrimination must initially be filed in a charge to the EEOC. However, "[i]f ... the Commission has not filed a civil action under this section or ... entered into a conciliation agreement ... the Commission ... shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought *against the respondent named in the charge* ... by the person claiming to be aggrieved." 42 U.S.C. § 2000e–5(f)(1) (emphasis added).

Defendants maintain that because the plaintiff did not list the individual defendants in the section of the EEOC charge, in which the discriminatory party is to be "named," [6] then she is barred from filing a subsequent action against them. Plaintiff counters that the various individual defendants were either sent a copy of the EEOC complaint directly, or were named, either specifically or in general, in the charge and thus satisfied the statutory prerequisite. In particular, the plaintiff claims that the February 28, 1990 charge was mailed to the attention of defendant Markowitz and specifically names defendant Keane in the body of the charge. The April 10, 1990 charge was also sent to Markowitz and specifically names defendant D'Ambrose, and refers to, but does not name, defendant Keane. This second charge also re-

---

**6.** The EEOC "Charge of Discrimination" requires the complainant to provide information in a section entitled "NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME" (capitalized in the original).

fers to the "Executive Committee," which consists of all the individual defendants.

In *Glus, supra,* the Third Circuit held that "the jurisdictional requirements for bringing suit under Title VII should be liberally construed." 562 F.2d at 887–88. *Glus* noted two reasons for requiring a claimant to name parties in the EEOC charge before instituting a suit in federal court: "to give notice to the charged party and provide an avenue for voluntary compliance without resort to litigation." 562 F.2d at 888. We find that the two EEOC charges contained sufficient references to the individual defendants to satisfy the "naming" requirement, so as to put them on notice and to provide an opportunity for voluntary conciliation.

In *Acampora v. Boise Cascade Corp.,* 635 F.Supp. 66 (D.N.J.1986), the plaintiff claimed that her employment was terminated by the corporate defendant because she became aware of thefts by her employer's operation manager and because of her gender. The operation manager sought dismissal of the claim against him, because the plaintiff had not named him in her EEOC charge, although he was specifically referred to in the body of the charge. The court held that this reference "in the body of the EEOC charge is sufficient to confer jurisdiction over the claim in the district court." *Acampora,* 635 F.Supp. at 71 (citing cases). This is so because the reference is "sufficient to notify the EEOC of the charges against [the individual defendant], and to enable the EEOC to give proper notice to [the individual defendant], investigate the charges, and to attempt to resolve the dispute prior to litigation." *Id.*

Likewise, in *Diem v. City and County of San Francisco,* 686 F.Supp. 806 (N.D.Cal. 1988), the plaintiff filed suit under Title VII alleging religious discrimination against various parties, including certain individuals not "named" in the EEOC charge. However, one of these individuals was named in the body of the complaint and others were named in a claim which was referenced in, and filed with, the charge. The court found that both of these references were sufficient to put the individual

defendants on notice of an impending discrimination claim. 686 F.Supp. at 811.

In fact, several courts have permitted a subsequent Title VII suit against a party not named in the EEOC charge where the plaintiff merely alleged facts from which the court or the EEOC could have inferred that the unnamed party also violated Title VII. *See Bernstein v. Aetna Life & Cas.,* 843 F.2d 359, 362 (9th Cir.1988); *Brewster v. Shockley,* 554 F.Supp. 365, 369 (W.D.Va. 1983); *Koster v. Chase Manhattan Bank,* 554 F.Supp. 285 (S.D.N.Y.1983). *See also Kaplan v. International Alliance of Theatrical and Stage Employees and Motion Picture Machine Operators of the United States and Canada,* 525 F.2d 1354 (9th Cir.1975); *Bumpers v. International Mill Services, Inc.,* 595 F.Supp. 166 (E.D.Pa. 1984). Indeed, the Ninth Circuit has gone so far as stating that "Title VII charges can be brought against persons not named in an E.E.O.C. complaint as long as they were involved in the acts giving rise to the E.E.O.C. claims." *Wrighten v. Metropolitan Hospitals, Inc.,* 726 F.2d 1346, 1352 (9th Cir.1984).

The plaintiff's second EEOC charge states that "a loss of confidence in [the plaintiff] by the Executive Committee" led to her termination. In *Pao v. Holy Redeemer Hosp.,* 547 F.Supp. 484 (E.D.Pa. 1982), the plaintiff physician filed an EEOC charge for discrimination, naming the hospital and referring to the "Board of Directors" of the hospital in the "particulars" section of the charge. The plaintiff then filed a subsequent Title VII action against the hospital and two of its doctors. The court found that it had jurisdiction over the unnamed individual doctor who was also a member of the Board of Directors of the hospital, because "notice to the Board of Directors [in the EEOC charge] was notice as to its individual members." 547 F.Supp at 495 (citing cases). This was so because "a complainant's 'factual statement' is 'the crucial element' in an EEOC charge." *Id.* (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 462 (5th Cir.1970)). The reference in the second charge to the "Executive Committee" as the entity which discharged the plaintiff should have been suf-

ficient notice to its individual members that they could be the subject of a subsequent Title VII suit for discrimination. *See also Diem*, 686 F.Supp. at 811 (an EEOC charge, which named the plaintiff's "co-workers, immediate supervisors, and Chief of the Fire Department" as the parties which allegedly harassed the plaintiff, would be sufficient to put all the individuals, generally referred to, on notice).

The rationale behind finding jurisdiction over defendants not specified in the EEOC charge section asking for the discriminatory parties, is that specific, as well as group, references to a party in the body of the charge is functionally analogous to being "named," because the reference fulfills the statutory purposes of 42 U.S.C. § 2000e–5.[7] The defendants are put on notice and the EEOC is provided the opportunity to conduct voluntary conciliation among the parties without resort to litigation. Because we find that the individual defendants were "named" in the EEOC charge, we need not consider the factors which only come into play when a party is "unnamed."[8]

The cases relied upon by the defendants may all be distinguished, because, in those cases, the individual defendants were not named nor referred to in the body of the charge. *See e.g., Borecki v. Eastern International Management Corp.*, 694 F.Supp. 47 (D.N.J.1988); *Fuchilla v. Prockop*, 682 F.Supp. 247 (D.N.J.1987); *Duva v. Bridgeport Textron*, 632 F.Supp. 880 (E.D.Pa. 1985). The instant case is unlike *Borecki* in at least three respects. First, an EEOC investigation would almost certainly have uncovered the individual defendants' alleged roles in the discrimination. Second, the "unnamed" individual defendants, should have known, either from the specific references, or the reference to the "Executive Committee," in the body of the charges, that they were on notice of a charge of discrimination. Third, the actions of the individual defendants, consisting of allegedly discriminatory conduct,

---

**7.** This is particularly true when considering the ambiguity of the instructions in the section in the EEOC charge which asks for the discriminatory party. *See supra* note 6. These instructions do not include "supervisory employee" or a similar term and thus contains no direction that individual employees of the complainant's employer are to be specifically named within this section as well. This is true even though the plaintiff may have been represented by counsel at the time of filing the charge. *Compare Braddy v. Jersey Shore Medical Center*, 44 Fair Empl.Prac.Cas. 149, 1987 WL 13002 (D.N.J. 1987) (the complainant was excused for not including individual defendants in this section, where he filed the charge without the assistance of counsel). Unfortunately, there was no supplemental section which asked for the names of such discriminatory supervisory employees. *Compare Martin v. Easton Pub. Co.*, 478 F.Supp. 796 (E.D.Pa.1979) (court had jurisdiction over defendants specifically named in section entitled, "others who discriminated against you (if any)").

**8.** *Glus* set forth four factors to consider in determining whether an unnamed party in the EEOC charge may still properly be a defendant in a subsequent Title VII action:

"1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint; 2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's

that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests to the unnamed party; 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party."

562 F.2d at 888.

Significantly, none of the *Glus* factors is to be independently decisive. Rather, each criteria must be considered with respect to the purposes of Title VII and the interests of the parties. *Glus v. G.C. Murphy Co.*, 629 F.2d 248, 251 (3d. Cir.1980), *vacated on other grounds sub nom., Retail, Wholesale & Department Store Union, AFL–CIO v. G.C. Murphy*, 451 U.S. 935, 101 S.Ct. 2013, 68 L.Ed.2d 321 (1981). Although we need not balance all four factors, we note that the finding that the defendants were "named" in the EEOC charge is supported by the fact that there is a close identity between the "named" and "unnamed" defendants. The interests of TMS, as the corporate entity, were very similar to those of the individual defendants, all of whom held senior management positions with the firm. An expedient resolution of the dispute would have benefitted all parties. TMS could have adequately represented the interests of the "unnamed" defendants in a EEOC action, and it would be fair to subject them to our jurisdiction. *Accord, Braddy, supra; Acampora*, 635 F.Supp. at 71–72.

were precisely the subject of the two administrative charges.

■ Defendants also claim that by filing a complaint, and subsequently an amended complaint, within the 180 day period for investigation, she is bound by the formal designations in the charge. This contention is meritless. The plaintiff only added her Title VII claims, in her amended complaint, following the receipt of two "Notice[s] of Right to Sue", issued by the EEOC on June 11, 1990, which stated that the EEOC was "terminating any further processing of this charge." The filing was made within 90 days of this date, as required by 42 U.S.C. § 2000e–5(f)(1). Even where the EEOC does not provide a notice to the defendants of a discrimination charge, or does not attempt conciliation procedures, a court is not prohibited from exercising jurisdiction over the defendants. *See Hicks*, 572 F.2d at 966; *Canavan v. Beneficial Finance Corp.*, 553 F.2d. 860, 863 (3d Cir.1977); *Brewster*, 554 F.Supp. at 367. We conclude, therefore, that it would be improper to dismiss the claims against the individual defendants.

### D. Count IV—Individual Defendants as "Employers" Under the Equal Pay Act

■ In count IV of her amended complaint, the plaintiff alleges that all the defendants unlawfully discriminated against her on the basis of sex with respect to wages, which constituted a violation of the federal Equal Pay Act (EPA). The individual defendants contend that the facts alleged in the complaint do not support a claim against them because they do not fall within the statutory definition of those en-

tities which can be liable under this section and, even if they may be liable under EPA, they should not be held liable where the corporate defendant is capable of providing relief to the plaintiff. While we find the latter contention to be without merit,[9] we agree that the complaint, as pleaded, fails to state a claim under the EPA against the individual defendants.

An "employer," for purposes of the EPA, "includes any person acting directly or indirectly in the interest of an employer in relation to an employee ..." 29 U.S.C. § 203(d). The term "employer," as used in this section, has "been interpreted expansively." *Donovan*, 712 F.2d at 1510, 1513 (citing, *inter alia, Rutherford Food Corp. v. McComb*, 331 U.S. 722, 728–29, 67 S.Ct. 1473, 1475–76, 91 L.Ed. 1772 (1947)). However, there are limitations; in order to find liability under this section an individual defendant must have "supervisory authority over the complaining employee" and must be "responsible in whole or part for the alleged violation." *Riordan v. Kempiners*, 831 F.2d 690, 694 (7th Cir.1987). *See also Patel v. Wargo*, 803 F.2d 632, 638 (11th Cir.1986).

As stated *supra*, "a corporate officer with operational control of a corporation's covered enterprise" may be held liable under the FLSA. *Donovan*, 712 F.2d at 1511. However, nothing in the plaintiff's complaint, nor in the EEOC charges, indicates which of the individual corporate officer defendants, if any, "had operational control of significant aspects of the corporation's day to day functions, including compensation of employees" particularly with respect to making the allegedly discriminato-

---

9. The Third Circuit has explicitly recognized that there may be "several simultaneous 'employers'" under the Fair Labor Standards Act, "any one of which may be liable as an employer under the Act." *Hodgson v. Arnheim and Neely, Inc.*, 444 F.2d 609, 611–12 (3d Cir.1971), *reversed on other grounds sub nom., Brennan v. Arnheim & Neely, Inc.*, 410 U.S. 512, 93 S.Ct. 1138, 35 L.Ed.2d 463 (1973). The fact that the individual defendants in the instant case were employees of the corporate "employer" does not insulate them from potential liability, because "[t]he overwhelming weight of authority is that a corporate officer with operational control of a cor-

poration's covered enterprise is an employer along with the corporation, jointly and severally liable under the FLSA for unpaid wages." *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983). *See also Dole v. Haulaway, Inc.*, 723 F.Supp. 274 (D.N.J.1989), *aff'd without op.*, 914 F.2d 242 (3d Cir.1990); *Dole v. Solid Waste Services, Inc.*, 733 F.Supp. 895, 923 (E.D.Pa. 1989), *aff'd without op.*, 897 F.2d 521 (3d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3271, 111 L.Ed.2d 781 (1990); *Gusdonovich v. Business Information Company*, 705 F.Supp. 262 (W.D.Pa. 1985)

ry wage, bonus and sales commission decisions. *Donovan*, 712 F.2d at 1514; *Patel*, 803 F.2d. at 638. These facts must be alleged in order to find that the individual defendants may be held liable under the EPA.[10] *See generally Brock v. Hamad*, 867 F.2d 804, 808 n. 6 (4th Cir.1989) (individual defendant properly considered an "employer" for purposes of this section where he hired and controlled company employees); *Dole*, 723 F.Supp. at 286–87; *Gusdonovich*, 705 F.Supp. at 268. Defendants' motion to dismiss the EPA claims against the individual defendants, therefore, shall be granted.[11]

For the aforementioned reasons, Defendants' Motion to Dismiss shall be GRANTED in part and DENIED in part.

An appropriate order will be filed this day.

---

**10.** This is unlike the Title VII claim of discriminatory discharge, in which, at least for purposes of a motion to dismiss, there are sufficient facts alleged in the pleadings to infer that the Executive Committee was the entity which ultimately discharged the plaintiff.

**11.** We find the facts alleged to be insufficient even as to defendant Keane's alleged liability under the Equal Pay Act. Although he was the plaintiff's immediate supervisor, there is no contention that he had control over setting her salary or awarding bonuses or sales commissions and therefore may be responsible for the alleged violation. *See Riordan, supra.*