**Albert T. ZALEWSKI, Plaintiff,**

v.

**M.A.R.S. ENTERPRISES, LTD., a Delaware corporation, Defendant.**

Civ. A. No. 81–395.

United States District Court,
D. Delaware.

June 29, 1982.

Richard R. Wier, Jr., of Prickett, Jones, Elliott, Kristol & Schnee, Wilmington, Del., for plaintiff.

Sheldon N. Sandler of Young, Conaway, Stargatt & Taylor, and Joel D. Tenenbaum of Woloshin & Tenenbaum, P.A., Wilmington, Del., for defendant.

## MEMORANDUM OPINION

LATCHUM, Chief Judge.

This is an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq.[1] Plaintiff, a white male, has filed a complaint containing three separate counts, each of which alleges discrimination on the basis of sex. (Docket Item ["D.I."] 1.) Specifically, Count I alleges that the defendant engaged in illegal discrimination when it discharged plaintiff, purportedly for economic reasons, and within a few days hired a female replacement for the same job. (D.I. 1, ¶¶ 7–9.) Count II alleges that the defendant engaged in an illegal classification of jobs in which male employees were placed in management positions and females in non-management positions. (D.I. 1, ¶¶ 13–17.) The discharge of plaintiff from his non-management position and the substitution of a female employee in that position allegedly was in furtherance of this discriminatory policy of segregating employees by gender. (Id.) Finally, Count III alleges that defendant's owner offered plaintiff a promotion on condition that plaintiff enter into a homosexual relationship with the owner, and that when plaintiff refused, plaintiff was discharged. Defendant has moved for partial summary judgment on Count III on the ground that plaintiff intentionally by-passed the administrative process with respect to this claim, (D.I. 14), and, accordingly, this claim is not properly before the Court.

## I. THE FACTS

Accepting the evidence and the inferences arising therefrom in the most favorable light to the plaintiff, the non-moving party, *Smith v. Pittsburgh Gage and Supply Co.,* 464 F.2d 870, 874 (C.A.3, 1972), the following pertinent undisputed facts appear from the record.

Plaintiff was employed as a pastry chef by M.A.R.S. Enterprises, Ltd., sometime in February, 1974. (D.I. 12, pp. 10, 12.) M.A.R.S. made diet desserts for people watching their weight. (D.I. 11, pp. 28, 35.) M.A.R.S. is a wholly owned subsidiary of Weight Watchers of Delmarva, a Delaware corporation (*id.* pp. 22, 51), which is fifty percent owned by Arthur Weiner. (*Id.* p. 28.) Sometime about the middle of May, 1974, plaintiff was informed by Jerry Taylor, the manager of the M.A.R.S.'s commissary where plaintiff worked, that because "the payroll was too high and there wasn't enough work for us to do anymore" that plaintiff and another male employee were being laid off. (*Id.* pp. 31–32.) A few days later, plaintiff stopped by the commissary "just to say hi" to his former supervisor and

---

1. Jurisdiction exists by virtue of 42 U.S.C. § 2000e–5(f)(3).

a female employee with whom he had worked and it was then that he observed another female employee doing some of the work which he had formerly performed. (*Id.* pp. 34, 41.) When plaintiff asked Taylor why the female was there and was told she was a new employee, plaintiff left and immediately proceeded to the State Anti-Discrimination Section of the Delaware Department of Labor, where he filed a charge of sex discrimination. (*Id.* pp. 34–35, 41.) The body of that charge, dated May 21, 1974, reads:

"I had been employed for over three months. I was fired because of lack of work and payroll was to [sic] high, and the next day a girl was hired in my place. I feel I have been sexually discriminated against." (D.I. 12, Ex. Z–2.)

Before signing the above charge of discrimination, plaintiff spoke to an intake clerk named Jennifer for about a half hour. (D.I. 12, p. 42.) In addition to telling the intake clerk about being replaced by a female employee, he described to her the details of a job offer that had been made to him by Weiner. (*Id.* pp. 43, 51.) Plaintiff said that about a month after he began work, Weiner offered him a job as his personal secretary contingent upon plaintiff's agreement to enter into a homosexual relationship with Weiner. (*Id.* pp. 24–26.) Plaintiff, who is "bisexual" (*id.* p. 66), responded that he would think about the offer. (*Id.* p. 28.) A couple of weeks later, however, he told Weiner that he did not want the job of personal secretary. Several weeks after that, plaintiff was terminated. (*Id.* p. 28.)

Although plaintiff discussed all these matters thoroughly with the intake clerk, who then prepared the charge of discrimination which plaintiff reviewed and signed (*id.* p. 42), the charge contained no reference whatsoever to Weiner's alleged offer of job advancement in return for sex. (*Id.* p. 43.) The sole reason for this conspicuous omission was that plaintiff specifically requested the intake clerk not to make any reference in the documents to that incident. (*Id.* pp. 42–43, 51, 59.) Plaintiff's deposition testimony is clear as to that fact:

Q: You say you told her what had happened and then she filled out a paper?

A: Yes, sir.

Q: And did you sign the paper?

A: Yes, sir.

Q: After reviewing it?

A: Yes, sir.

Q: Did it contain—

A: We read it over together.

Q: Did it contain everything you wanted it to?

A: No.

Q: What didn't it contain?

A: It didn't contain the job advancement part of it.

Q: And did you discuss that with this Jennifer?

A: Yes, I did. I told her about it.

Q: What did she say?

A: We didn't put it in. Well, she didn't add it in.

Q: Did you discuss that with her?

A: Well, *I told her right then and there, right at that point in my life, I didn't know if I wanted her to put that in there.*

Q: I see. *Is that why she didn't put it in?*

A: *Yes. It was on my request.*

Q: Can you recall any other part of the conversation?

A: With Jennifer?

Q: With Jennifer.

A: *Just the facts as I saw them. She wrote them down. Then we reviewed it together and I signed it.*

(D.I. 12, pp. 42–43; emphasis added.)

Further into the deposition, plaintiff was again questioned regarding the job advancement incident as follows:

Q: Did you discuss with any of those people the Weiner conversation that you discussed before about the personal secretary business?

A: Did I discuss with anyone—

Q: —from the EEOC.

A: No. Except when I first went in and I told the girl all about it, *but I told her I did not want anything said about it right at the time.*

Q: And you didn't talk to anybody else about it afterward, from the EEOC?

A: Oh, no.

(*Id.* p. 51; emphasis added.)

Again in another passage, the plaintiff confirmed that he consciously elected not to include the job advancement claim in his charge of discrimination.

Q: You also indicated before that you declined to include that in your charge of discrimination.

A: Yes, just out of embarrassment.

(*Id.* p. 59.)

The Equal Employment Opportunity Commission ("EEOC") received the original charge quoted above, which plaintiff signed, and processed the case. Plaintiff who is a high school graduate (*id.* p. 4) spoke to an EEOC representative on the telephone "once a week for five years" (*id.* pp. 38, 50–51) and corresponded with the EEOC on a regular basis by mail as well, but never again did he discuss the incident of the Weiner job advancement offer. (*Id.* p. 51.) As a result of the EEOC's investigation, a determination was made under date of February 24, 1977, that reasonable cause existed that plaintiff's original charge that he was fired and a female hired in his place was true. (*Id.* Ex. Z–1.) In addition, based on the EEOC's investigation and M.A.R.S.'s letter to the EEOC, stating that male employees are usually in management positions while females were in non-management positions, the EEOC found reasonable cause to believe M.A.R.S.'s classification policy also violated Title VII. (*Id.*) Of course, no determination was made by the EEOC regarding the job advancement charge which plaintiff deliberately withheld from his administrative complaint.

## II. THE LAW

■ Filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII, 42 U.S.C. § 2000e–5(e). *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 798, 93 S.Ct. 1817, 1822, 36 L.Ed.2d 668 (1973); *Ostapowicz v. Johnson Bronze Co.,* 541 F.2d 394, 398 (C.A. 3, 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977). There is no question that the charge appearing in Count III of the complaint in this Court was never filed with or investigated by the EEOC and it is on this ground that defendant moves for partial summary judgment. Thus, whether Count III should remain in the case presents the problem here faced.[2]

■ The difficulty in resolving such a problem is caused by the tension between the judicially-developed presumption against technical defaults under Title VII, *see e.g., Love v. Pullman,* 404 U.S. 522, 527, 92 S.Ct. 616, 619, 30 L.Ed.2d 679 (1972), and Congress' clear mandate that Title VII claimants initially resort to administrative proceedings. As a result of this tension, the Courts have developed a rule that permits a Title VII plaintiff to expand the complaint beyond the specific elements contained in the charge before the EEOC. Under such a rule, the elements which form the subject matter of the complaint may be broader than the charge, so long as those elements are "reasonably related to the charge or may reasonably be expected to grow out of it." *Hicks v. Abt Associates, Inc.,* 572 F.2d 960, 964 (C.A.3, 1978); *Ostapowicz v. Johnson Bronze Co., supra* at 398. The key element then that controls the scope of the complaint is the scope of the investigation. *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 466 (C.A.5, 1970).

Where, however, the complaint adds subject matter which is not reasonably related

2. There is no dispute that plaintiff's Title VII claim presented in Count I of the complaint was made and investigated by the EEOC. Nor is there any dispute that the claim presented in Count II also was developed by the EEOC during the course of its investigation. Accordingly, the jurisdictional prerequisite for Counts I and II exist. *Ostapowicz v. Johnson Bronze Co., supra* at 398.

to the charge made to the EEOC, and was not a part of its investigation, and not subject to conciliation in the administrative process, the Courts have generally refused to entertain the expanded claims. *Montano v. Amstar Corporation,* 502 F.Supp. 295 (E.D.Pa.1980); *Le Gare v. University of Pennsylvania Medical School,* 488 F.Supp. 1250 (E.D.Pa.1980); *Price v. John F. Lawhorn Furniture Co.,* 24 FEP 1506 (N.D.Ala. 1978); *EEOC v. St. Annes Hospital,* 21 FEP 158 (N.D.Ill.1979).

The charge signed by the plaintiff and investigated by the EEOC in this case was a straightforward incident of male-female discrimination and is properly set forth in Count I. Count II is also properly before the Court because the claim of discriminatory segregation of employees in management and non-management positions based on sex was reasonably related to the allegations of discriminatory discharge contained in Count I. On the other hand, in Count III plaintiff claims he was offered a job as personal secretary to the owner of the company in return for homosexual favors, and because he declined the offer he was discharged. This count alleges facts wholly different from the allegations of disparate male-female treatment contained in Counts I and II. The charge presented to the EEOC and the expanded claim in Count III set forth two entirely unrelated and independent charges. An EEOC investigation of sex discrimination based on the original charge would have been no more likely to disclose the sexual harassment claim than if the initial charge had been one of discrimination based on race or national origin. The sole common denominator of the two charges is the fact that the discrimination allegedly involved sex, yet the two sex discrimination claims were in no way "alike or related." *Price v. Lawhorn, supra. Accord, Ong v. Cleland,* 642 F.2d 316 (C.A.9, 1981). Plaintiff attempts to avoid summary judgment by arguing that the intake clerk who initially interviewed him and recorded his original discrimination charge should have included his sexual harassment claim in this complaint. (Pl.Br. 13). However, the plaintiff cannot

place the blame elsewhere; he clearly expressed the personal desire that he did not wish to press the latter claim. This is quite unlike the situation in *Hicks v. Abt Associates, Inc.,* 572 F.2d 960 (C.A.3, 1978), where the Court held that the plaintiff should not be penalized for the possible misconduct of the EEOC. *Id.* at 966. In *Hicks,* the charging party specifically requested the charge to be amended but this was refused by the EEOC. Here, quite a different situation arose, because the plaintiff specifically asked the investigator not to include the sexual harassment charge in his complaint and she complied with his request. This is not analogous to the *Hicks'* situation; it was not misconduct on the investigator's part to fail to force plaintiff to sign a sworn charge which plaintiff was unwilling to do. Furthermore, although plaintiff was in constant contact with the EEOC over a five-year period, he never attempted to amend his charge to allege the job advancement claim.

Consequently, because plaintiff consciously by-passed the administrative process which Congress mandated with respect to his job advancement claim, now made for the first time in Count III, summary judgment will be entered on that Count in defendant's favor and against the plaintiff.

An order will be so entered.