James C. SHAVER, Plaintiff,

v.

CORRY HIEBERT CORPORATION,
a division of Hon Industries, and
Hon Industries, Defendants.

Civil Action No. 94–318.

United States District Court,
W.D. Pennsylvania.

April 2, 1996.

Neal A. Sanders, Law Office of Neal Alan Sanders, Butler, PA, for plaintiff.

John D. Goetz, Jones, Day, Reavis & Pogue, Pittsburgh, PA, for defendants.

## MEMORANDUM

McLAUGHLIN, District Judge.

This action arises out of the termination of the Plaintiff, James C. Shaver, as an employee of Corry Hiebert Corporation (or Corry Hiebert Corporation) in April 1993. Pending before this Court are Shaver's claims for damages under both the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and the Pennsylvania Human Relations Act ("PHRA"), 43 Pa.Stat. §§ 951 et seq. Defendants have filed both a "Renewed Motion to Dismiss or, in the Alternative, for Summary Judgment" and a "Motion for Partial Summary Judgment." For the reasons that follow, the former motion will be denied and the latter motion will be granted.

## I. *BACKGROUND*

Shaver was born on April 9, 1936. He was informed on February 25, 1993 that he would be permanently laid off from his position as a Maintenance Supervisor at Corry Hiebert's facility in Corry, Pennsylvania. The effective date of this layoff was April 30, 1993. Shaver filed a charge with the EEOC on October 29, 1993, alleging that both the earliest and the latest date he had been discriminated against was February 26, 1993. Ex. A to Corry Hiebert's Brief in Support of Motion to Dismiss. Corry Hiebert was the only respondent named in this charge. In the section of the "Charge of Discrimination" form labelled "The Particulars Are:," Shaver wrote

> I. I have been employed by Respondent since December of 1955 and my most recent position was Maintenance Supervisor; however, I have varied experience in many jobs with the company. I was permanently laid-off on April 30, 1993.
>
> II. David J. Tanner, Director of Human Resources, gave me a termination letter which stated that Respondent must make permanent layoffs due to projected market conditions.
>
> III. I believe that Respondent has discriminated against me in violation of the Age Discrimination in Employment Act of 1967, as amended, by permanently laying me off at the age of 57 in that I was willing and able to do the jobs of younger employees who were retained.

*Id.* Shaver did not check the box that would have indicated that he wished to have his charge filed with both the EEOC and the appropriate state agency. Nor did he identify the Pennsylvania Human Relations Commission ("PHRC")—the state administrative body authorized to investigate charges made under the PHRA, *see* 43 Pa.Stat. § 959—in the area provided for "*State or local Agency, if any.*" *Id.* On November 9, 1993, the EEOC transmitted to the PHRC a copy of Shaver's charge and a notice that the charge would be investigated initially by the EEOC. Ex. B to Defendants' Brief in Support of Motion to Dismiss.

The EEOC investigated Shaver's charge. In an affidavit submitted with the charge, Shaver identified the following as the reasons that he believed that he was discriminated against:

I was replaced by Clark McCray (early 40's). He was laid-off in September of 1993. However, there are other younger employees still working and who have less experience and qualifications than I have. For example, Tom Puluhl (mid–30's), Paint Shop Supervisor, was kept and I could have performed his job. I was in charge of the paint department for over a year. During that time I handled maintenance and paint duties at the simultaneously [sic]. This was around 1981.

I knew more about the shop than anybody else. I was the most qualified person to be the Maintenance Supervisor. I have no idea who is doing the Maintenance job at this point.

About 15 people were laid-off effective April 30. Nine of these people were over 40 years of age.

Ex. 3 to Defendants' Brief in Support of Motion for Summary Judgment, at 2. In a July 1994 letter to an EEOC investigator, Shaver stated that he was qualified to work as the maintenance supervisor, in a plant safety position, or as supervisor of the paint shop. Ex. 5 to Defendants' Brief in Support of Motion for Summary Judgment, at 1.

Shaver received a determination and a right-to-sue letter from the EEOC on September 8, 1994. First Amended Complaint ("FAC") at ¶ 25; see Ex. 2 to Defendants' Brief in Support of Motion for Partial Summary Judgment. The EEOC determination stated in part, "Charging Party alleged that Respondent discriminated against him in violation of the ADEA by laying him off on April 30, 1993 because of his age (57) after approximately 38 years of employment with Respondent." Ex. 2, at 1. The EEOC's investigator concluded "that there is no reasonable cause to believe that there has been a violation of the statute under which the charge has been filed." *Id.* at 2.

Shaver commenced this action on November 21, 1994. In his Complaint, he alleged three sources of liability. In Count I, he alleged that Defendants had violated ADEA. In Count II, Shaver alleged that Defendants had violated the PHRA, also by discriminating against him on the basis of his age. In Count III, Shaver alleged that the Defendants were liable to him for negligent infliction of emotional distress.

On July 25, 1995, this Court entered an order granting in part and denying in part Defendants' motion to dismiss. This Court struck the prayer in Count I for compensatory and punitive damages under ADEA. It directed Shaver to replead that count to clarify his argument that his PHRA claim was timely because the running of the period in which he was required to file it had been tolled. Finally, this Court granted the motion to dismiss Count III.

Shaver repleaded the surviving counts as directed by this Court. These motions followed.

## II. *STANDARD OF REVIEW*

On a motion to dismiss under Rule 12(b)(6), this Court accepts as true all factual allegations in the complaint. *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit,* 507 U.S. 163, 163, 113 S.Ct. 1160, 1161, 122 L.Ed.2d 517 (1993). The proper inquiry is "whether relief could be granted ... 'under any set of facts that could be proved consistent with the allegations.'" *Gasoline Sales, Inc. v. Aero Oil Co.,* 39 F.3d 70, 71 (3d Cir.1994) (quoting *National Organization for Women, Inc. v. Scheidler,* 510 U.S. 249, 256, 114 S.Ct. 798, 803, 127 L.Ed.2d 99 (1994)). If no cause of action can be identified, dismissal is proper.

The movant is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." F.R.Civ. P. 56(c). This rule allows parties to demonstrate prior to trial that opposing claims "have no factual basis." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1986). The inquiry here is "whether there is any need for a

trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may be reasonably resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

The moving party has the initial burden of demonstrating that no genuine issue of material fact exists. *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. Thereafter, the burden shifts to the non-moving party to demonstrate that there is a genuine issue for trial. F.R.Civ.P. 56(e); *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553. All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962).

## III. DISCUSSION

### A. Motion to Dismiss Count II

Defendants argue that Count II of this complaint, in which Shaver alleges a violation of the PHRA, should be dismissed as untimely because Shaver failed to file an administrative charge of discrimination with an appropriate agency within the 180 days provided under section 9(h) of the PHRA, 43 Pa. Stat. § 959(h).[1] They correctly note that the EEOC charge was not filed until October 29, 1993, more than 180 days after the alleged discrimination.[2] Shaver submits, however, that his failure to file a timely charge should be excused under the doctrine of "equitable tolling."

■ Section 12(e) of the PHRA provides that the 180–day period in which to file an administrative charge may be extended through equitable tolling. 43 Pa.Stat. § 962(e); *Brennan v. National Telephone Directory Corp.,* 850 F.Supp. 331, 341 (E.D.Pa.1994). However, "restrictions on equitable tolling … must be scrupulously observed." *Williams v. Army and Air Force Exchange Service,* 830 F.2d 27, 30 (3d Cir. 1987) (quoting *School District of Allentown v. Marshall,* 657 F.2d 16, 19 (3d Cir.1981)) (alteration in original). There are three "principal, although not exclusive" situations in which equitable tolling may arise. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1387 (3d Cir.1994). These include "if (1) the defendant has actively misled the plaintiff, (2) if the plaintiff has 'in some extraordinary way' been prevented from asserting his rights, or (3) if the plaintiff has timely asserted his rights mistakenly in the wrong forum." *Kocian v. Getty Refining & Marketing Co.,* 707 F.2d 748, 753 (3d Cir.) (quoting *School District v. Marshall,* 657 F.2d 16, 20 (3d Cir.1981)), *cert. denied,* 464 U.S. 852, 104 S.Ct. 164, 78 L.Ed.2d 150 (1983). Arguments that a time period should be tolled because the EEOC misled a claimant are typically analyzed under the second of these scenarios. *See, e.g., Schafer v. Board of Public Education,* 903 F.2d 243, 251 (3d Cir.1990); *Kocian,* 707 F.2d at 753.

■ Although this Court earlier expressed "serious reservations" about the viability of Shaver's equitable tolling argument, *Shaver v. Corry Hiebert Corp.,* C.A. No. 94–318, at 4 (W.D.Pa. July 25, 1995), the argument is sufficiently definite to survive this motion. On repleading, Shaver has alleged the following:

> 69. Plaintiff has preserved his rights to bring this PHRA claim in that on or about

---

1. Under these circumstances, ADEA requires the filing of an administrative charge within 300 days of the allegedly discriminatory activity. *See* 29 U.S.C. § 626(d)(2). There is therefore no dispute as to the timeliness of the EEOC charge for the purposes of Count I.

2. Shaver contends that, even though his EEOC charge identified the February 26, 1993 date on which he was informed of his layoff as the sole date of the discriminatory activity, the 180–day limitations period should actually have run from April 30, 1993, the effective date of the layoff. This Court would be inclined to disagree. *See*

*Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980) (limitations period within which to file EEOC charge premised on unlawful discharge begins to run when professor notified of denial of tenure and offered termination contract, not at conclusion of terminal contract). However, this issue need not be resolved, as, even if Shaver is correct, he filed his EEOC charge 182 days after his layoff became effective on April 30. Thus, unless the limitations period was somehow extended, the charge was filed too late to preserve the PHRA claim.

June 3, 1993, Plaintiff went to the EEOC at its area office in Pittsburgh, Pennsylvania to file a charge of discrimination. At that time, Plaintiff was informed by Eugene Reed, Supervisor, that the EEOC could handle the entire case from its Pittsburgh office and that Plaintiff need not file a charge with any other agency because all aspects of the Plaintiff's charge would be handled out of the EEOC's office.

70. At the time of said meeting on or about June 3, 1993, Mr. Reed further advised Plaintiff that he should not file his charge of discrimination until immediately before his severance benefits were exhausted, which was November, 1993.

71. On the advice of Mr. Reed, Plaintiff returned to the EEOC later in 1993 and filed a charge of discrimination with the EEOC on October 29, 1993. At that time, based upon the representations of Mr. Reed, Plaintiff was led to believe that his charge of discrimination was being cross-filed with the PHRC on October 29, 1993, and that the same was timely.

72. Plaintiff was never advised by the EEOC or any other agency that he had to file a charge with the Pennsylvania Human Relations Commission (PHRC) within 180 days from the date of his discharge, but rather believed that the EEOC would handle the PHRC charge from its office in Pittsburgh, Pennsylvania.

73. Thus, based upon the representations of Eugene Reed from the EEOC, Plaintiff did in fact file a timely charge of discrimination with the PHRC.

FAC at ¶¶ 69–73. Shaver was not represented by counsel at the time of his alleged June 1993 visit to the EEOC.

The facts alleged here are close to those found to have given rise to equitable tolling in *Anderson v. Unisys Corp.*, 47 F.3d 302, 306–07 (8th Cir.), *cert. denied*, — U.S. —, 116 S.Ct. 299, 133 L.Ed.2d 205 (1995). There, Anderson was protected by the ADEA when he was laid off by the defendant on April 2, 1990. In response to his inquiries to the Minnesota Department of Human Relations ("MDHR") in the fall of 1990, he was informed by letter that he had one year to file an administrative charge with that body

and that the MDHR would file with the EEOC any charge it received that alleged a violation of federal anti-discrimination law. The letter was correct with regard to the limitations period under Minnesota's anti-discrimination statute; it did not mention, however, that the applicable limitations period under ADEA was 300 days. *Id.* at 306. Anderson did not file his charges with the MDHR and the EEOC until March 25, 1991. *Id.* at 304.

The Eighth Circuit held that the ADEA limitations period was tolled by the actions of the MDHR. The Court concluded that the MDHR's letter "would easily mislead a claimant unassisted by counsel." *Id.* at 307. The court noted, "when an administrative agency misleads a complainant, particularly one who is without the benefit of counsel, equitable tolling may be justified." *Id.* at 306–07. It rejected the defendant's argument that tolling was inappropriate because the MDHR's letter had only provided incomplete information, rather than false information. *Id.* at 307.

Courts in this circuit have also applied equitable tolling under similar circumstances. In *Altopiedi v. Memorex Telex Corp.*, 834 F.Supp. 800 (E.D.Pa.1993), the plaintiff was dismissed on October 10, 1990. He first visited the PHRC in March 1991. The PHRC mailed him a questionnaire on April 1, 1991 with directions to return it within five days, and he did so on April 6. The PHRC requested on April 9, 1991, the 181st day after the plaintiff's discharge, that he sign the formal charge. Again, the plaintiff promptly followed the PHRC's instruction. *Id.* at 807. The district court denied the defendant's motion for summary judgment, finding that the evidence could support the conclusion that the plaintiff had done everything within his power except sign the formal charge within the 180–day period and that this failure was caused—and excused—by "the bureaucratic delay of the PHRC." *Id.* See also *Brennan v. National Telephone Directory Corp.*, 881 F.Supp. 986, 998 (E.D.Pa. 1995) (analyzed under third *Kocian* scenario; PHRA claim not barred where EEOC failed to follow plaintiff's direction to cross-file charge with PHRC).

Here, Shaver alleges that he was without counsel during 1993. He alleges that he visited the EEOC office in Pittsburgh in an effort to safeguard his rights under the appropriate statutes. He further alleges that the information he was given at the EEOC office was inadequate to protect his rights under the PHRA because it was incorrect and incomplete. If these allegations were proven to be true, they would amount to Shaver's having been misled in the same manner as the *Anderson* plaintiff. Although Shaver was not as close as Altopiedi to filing his complaint within the prescribed time, his First Amended Complaint supports the conclusion that he similarly relied on the administrative agency for direction in how to preserve his rights. Therefore, assuming the truth of the pleaded facts, the limitations period was tolled between Shaver's June visit to the EEOC office and his filing of a charge on October 29.

Defendants argue that *Kocian* itself suggests that equitable tolling cannot be appropriate here. In *Kocian*, the plaintiff admitted that she was aware of the applicable 180–day period applicable to her in which to file an administrative charge under Title VII and stated that she visited her local EEOC office both 93 and 177 days after her discharge. On the 181st day after her discharge, she received a proposed charge from the EEOC with a letter advising her to review, sign, and return that charge promptly. Kocian and her lawyer redrafted the charge and returned it to the EEOC on the 194th day. The EEOC mailed a corrected charge, with another letter requesting prompt action, to Kocian on the 201st day. She returned the signed charge four days later. 707 F.2d at 753–54. Kocian argued that she was entitled to equitable tolling because she had begun to pursue her administrative remedies well before the expiration of the 180–day period and because the EEOC's letters to her on the 181st and 201st post-discharge days led her to believe that her charge was subject to a 300–day limitations period. *Id.* at 754.

The Third Circuit disagreed and declined to toll. It observed that the letters from the EEOC that arrived after the 180th day "could have lulled her into believing that her charge was timely but could not have caused her late filing." *Id.* The court also found that the language of the letter sent on the 181st had not given Kocian any reason to believe that her charge had already been filed or that any future changes to the drafted charge would be in the nature of amendments. *Id.* Noting that Kocian was represented by counsel and had sued a previous employer under Title VII, the court also concluded that her "arguments would be more appealing if she had been an inexperienced litigant proceeding pro se." *Id.* at 755.

*Kocian* does not command the same result here. Shaver, at least on the face of the complaint, was an "inexperienced litigant proceeding pro se." Given the timing of Shaver's June 1993 visit to the EEOC office, the information that he alleges he received at that time could have caused him to delay filing his charge until more than 180 days after his dismissal. The *Kocian* court noted, "if the EEOC's conduct actually misled [the complainant] to delay her filing, those beliefs and actions may justify equitable tolling." *Id.* at 754 n. 9. The allegations of the complaint are sufficient to allow Shaver to proceed further with this claim.

■ Defendants also allege that Shaver should not be allowed to continue with this count because he never filed a charge directly with the PHRC. This failure to file is not disputed. However, Shaver did file a charge with the EEOC. Regulations promulgated under ADEA allow the EEOC to refer charges of age discrimination arising in Pennsylvania to the PHRC. *See* 29 C.F.R. § 1626.9. The EEOC made such a reference in this case. The EEOC and the PHRC have entered into a work-sharing agreement pursuant to 29 U.S.C. § 626. Therefore, for the purpose of determining timeliness, Shaver's charge is deemed to have been filed with the PHRC when filed with the EEOC. *Cf.* 29 C.F.R. § 1626.10(c) (timeliness of charge cross-filed with EEOC by state agency is determined by reference to date on which charge was filed with state agency). Thus, the fact that Shaver never filed a charge with the PHRC does not alone prevent this Court's exercising jurisdiction over Shaver's PHRA claim.

Finally, Defendants submit that Shaver never requested that his charge be cross-filed. They are correct. However, this failure can be excused. His charge was actually transmitted to the PHRC. The EEOC both had clear discretion to do so and followed a policy of acting to "assure that the prerequisites for private law suits [under ADEA] are met." 29 C.F.R. § 1626.9(a). Therefore, this Court concludes that Shaver's charge was presented to the PHRC in a manner adequate to preserve his right to sue under the PHRA.

Accordingly, this motion will be denied.

B. *Motion for Partial Summary Judgment as to Count I*

On this motion, Defendants argue that this Court should grant summary judgment with respect to Shaver's allegation that, due to his age, he was not rehired or transferred to another Corry Hiebert facility. *See* FAC at ¶¶ 36–41. They submit that no allegation of failure to transfer or failure to rehire was presented in Shaver's EEOC charge. They conclude that summary judgment is appropriate as to those allegations because Shaver cannot raise such allegations in the first instance before this Court.

Shaver offers two responses, neither of which is persuasive. First, he states that his EEOC charge actually included an allegation of improper failure to rehire or transfer. He cites his assertion to the EEOC that "I was willing and able to do the jobs of younger employees who were retained." This Court agrees with the Defendants, however, that, by its terms, the charge addresses no more than whether Shaver should have been transferred to another position within the Corry plant at the time of his dismissal. There is no express allegation of an improper failure to rehire or an improper failure to transfer to another facility.

Second, he alleges that, even if not specifically included in his charge, this allegation was within the fair scope of the resulting EEOC investigation. Generally, "the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to

grow out of the charge of discrimination." *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) (discussing standard in Title VII action); *see also Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 966 (3d Cir.1977) (to same effect). To be allowed in a district court action, claims not presented to the EEOC must usually allege not only discrimination on the same basis, but the same type of discriminatory activity. *See, e.g., Parsons v. Philadelphia Coordinating Office of Drug and Abuse Programs*, 822 F.Supp. 1181, 1184 (E.D.Pa.1993) (claim of failure to promote on basis of race not preserved by EEOC charges alleging unequal pay on basis of race and retaliation); *Sandom v. Travelers Mortgage Services, Inc.*, 752 F.Supp. 1240, 1247 (D.N.J.1990) (claim of sexual harassment not preserved by EEOC charge alleging other forms of gender-based discrimination); *Zalewski v. M.A.R.S. Enterprises, Ltd.*, 561 F.Supp. 601, 603–04 (D.Del.1982) (claim of quid-pro-quo harassment not preserved by EEOC charge alleging termination on basis of gender). Claims not included in an EEOC charge but permitted by district courts typically "ar[i]se during the pendency of the EEOC investigation, or [are] closely related to conduct alleged in the charge (such as a claim of retaliation for filing the charge) or [are] considered explanations of the charge." *Sandom*, 752 F.Supp. at 1247.

Shaver's charge could not reasonably have been expected to lead to an investigation of whether he should have been rehired subsequent to his termination or whether he should have been transferred to another facility. An allegation of wrongful termination does not necessarily include an allegation that an employer has also improperly failed to rehire an employee. *Lawson v. Burlington Industries*, 683 F.2d 862, 863–64 (4th Cir.) *cert. denied*, 459 U.S. 944, 103 S.Ct. 257, 74 L.Ed.2d 201 (1982). An investigation of a failure to rehire or to transfer would not ordinarily be included in an investigation solely of a decision to terminate. The former investigation would be much broader in both temporal and geographic scope, particularly where, as here, a plaintiff's allegations in-

clude other facilities maintained by the same employer.

Such an investigation also would not reasonably follow from Shaver's charge in particular. Again, the charge said nothing about a failure to rehire or transfer. Shaver identified February 26, 1993 as both the earliest and latest dates on which he was discriminated against. *See Miller v. International Telephone & Telegraph Corp.,* 755 F.2d 20, 23–25 (2d Cir.), *cert. denied,* 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985) (single date on form is probative of absence of failure-to-rehire claim). His affidavit stated that he was the most qualified person to act as the maintenance supervisor and that he knew "more about the shop than anybody else." Nothing in the record of the EEOC investigation that actually occurred as a result of the charge contradicts this conclusion. Finally, Shaver did not name HON Industries as a respondent in its EEOC charge. As Defendants note, Corry Hiebert could not have transferred Shaver or rehired him following the closing of the Corry facility in December 1993.[3] Under these circumstances, this Court has no jurisdiction over this portion of Shaver's claims.

## IV.  CONCLUSION

An appropriate order will follow.

### ORDER

AND NOW, this 2nd day of April, 1996, for the reasons stated in the accompanying Memorandum, IT IS HEREBY ORDERED:

1) that Defendants' Motion to Dismiss, or, in the Alternative, for Summary Judgment [Doc. 21] is DENIED and

2) that Defendants' Motion for Partial Summary Judgment [Doc. 32] is GRANTED and judgment is hereby entered in favor of the Defendants, Corry Hiebert Corporation and HON Industries, and against the Plaintiff, James C. Shaver, as to the Plaintiff's allegations that Defendants im-

properly failed to rehire him or transfer him to another facility.

---

**3.** Shaver appears to have read Defendants' argument in this regard as urging that summary judgment is appropriate as to all claims against HON Industries. This Court does not read this argument in this manner and, of course, expresses no opinion as to whether such an argument would be correct.