Cynthia D. FOUST,

v.

FMC CORPORATION.

Civil Action No. 97–0029.

United States District Court,
E.D. Pennsylvania.

April 21, 1997.

Ronald V. Cole, Philadelphia, PA, for Plaintiff.

Wayne A. Graver, Lavin, Coleman, Finarelli & Gray, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

PADOVA, District Judge.

Plaintiff, an African–American woman, brought this action against Defendant, her employer, claiming that she was discriminated against on the basis of race. Defendant has moved to dismiss the Complaint on three grounds: (1) failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6); (2) insufficiency of process pursuant to Rule 12(b)(5); and (3) lack of jurisdiction for failure to exhaust administrative procedures pursuant to Rule 12(b)(1). For the reasons that follow, I will deny the Motion.

## I. BACKGROUND

The Complaint alleges the following: Plaintiff was initially employed by Defendant from October 1988 until August 1994, when she was laid off. At that time, Plaintiff was an Administrative Secretary with a rank of GL–7. In September 1994, Plaintiff was hired by Defendant through a temporary employment agency to fill a GL–7 position. In November 1994, Defendant announced an opening for an Administrative Secretary GL–7, and Plaintiff applied for it. Plaintiff claims that the Caucasian candidate whom Defendant hired for the position was less qualified than she was, and on April 5, 1995, she filed a Charge of Discrimination ("Charge") with the Equal Employment Opportunity Commission ("EEOC"). Thereafter, Defendant offered Plaintiff a permanent position as an Administrative Secretary GL–7, which she accepted on September 11, 1995. In January 1996, some four months after Plaintiff was rehired, Defendant notified Plaintiff that her position would be eliminated in January 1997. Plaintiff claims that Defendant offered her the position in September 1995, knowing that it would be eliminated, to cause her to withdraw her Charge and to minimize damages. Plaintiff also claims that Defendant offered her the soon-to-be eliminated position in retaliation for her EEOC protected activity.

Plaintiff continued with her EEOC action and on September 27, 1996, the EEOC issued her a determination and "Right to Sue" letter.

## II. LEGAL STANDARD

### A. Motion to Dismiss

The purpose of a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint. *Winterberg v. CNA Ins. Co.,* 868 F.Supp. 713, 718 (E.D.Pa.1994), *aff'd,* 72 F.3d 318 (3d Cir.1995). A claim may be dismissed under Rule 12(b)(6) only if the plaintiff can prove no set of facts in support of the claim that would entitle her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In considering such a motion, a court must accept all of the facts alleged in the complaint as true and must liberally construe the complaint in the light most favorable to the plaintiff. *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994); *Robb v. City of Philadelphia,* 733 F.2d 286, 290 (3d Cir.1984). The question is not whether the plaintiff will ultimately prevail, but whether she is entitled to present evidence in support of her claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

In deciding a motion to dismiss, the district court generally considers only the allegations of the complaint, exhibits attached to the complaint, and matters of public record. If other documents are presented, the court converts the motion to one for summary judgment. *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993), *cert. denied,* 510 U.S. 1042, 114 S.Ct. 687, 126 L.Ed.2d 655 (1994). There are, however, exceptions to this general rule. The United States Court of Appeals for the Third Circuit has held that a district court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Id.* The court reasoned that if the district court could not consider such a document, a plaintiff with a legally deficient claim could sur-

vive a motion to dismiss simply by failing to attach a dispositive document on which it relied. *Id.* In allowing the document to be considered, the Third Circuit reasoned:

> Our decision will not undermine the rationale underlying Rule 12(b)(6)'s requirement that a motion to dismiss be converted to a summary judgment motion if a court considers matters outside the pleadings. The reason that a court must convert a motion to dismiss to a summary judgment motion if it considers extraneous evidence submitted by the defense is to afford the plaintiff an opportunity to respond. When a complaint relies on a document, however, the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute evidence is greatly diminished.

*Id.* (citations omitted). In a similar vein, the Third Circuit stated earlier:

> A finding that Plaintiff has had notice of documents used by defendant in a 12(b)(6) motion is significant since, as noted earlier, the problem that arises when a court reviews statements extraneous to a complaint generally is the lack of notice to the plaintiff that they may be so considered; it is for that reason—requiring notice so that the party against whom the motion to dismiss is made may respond—that Rule 12(b)(6) motions are ordinarily converted into summary judgment motions. Where plaintiff has actual notice of all the information in the movant's papers and has relied upon these documents in framing the complaint the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated.

*Cortec Indus. v. Sum Holding L.P.*, 949 F.2d 42, 48 (3d Cir.1991), *cert. denied*, 503 U.S. 960, 112 S.Ct. 1561, 118 L.Ed.2d 208 (1992).

In the instant case, Defendant attached to its Motion to Dismiss a copy of the Right to Sue letter the EEOC had issued to Plaintiff. Plaintiff, in turn, attached to her Response her own affidavit as to her change of residence, a postmarked EEOC envelope showing the date on which the EEOC letter was mailed to her, and an exchange of letters between her counsel and the EEOC investigator assigned to her case during the pendency of the investigation. This is all information of which Plaintiff had actual notice; indeed, it was information in Plaintiff's possession. In addition, both Plaintiff and Defendant rely on the documents to prove their respective points. Neither party suggests that it needs additional discovery on the issues addressed by the Motion to Dismiss. Neither party challenges the authenticity of the documents or argues that it is disadvantaged by the Court's considering the documents attached to the Motion and Response. Under these circumstances, "the necessity of translating a Rule 12(b)(6) motion into one under Rule 56 is largely dissipated." *Cortec*, 949 F.2d at 48. I will therefore continue to treat Defendant's Motion as one to dismiss, despite the additional documents that the parties introduce in the Motion and Response.

## III. DISCUSSION

### A. Failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

Defendant contends that the Court should dismiss Plaintiff's Complaint because she failed to file this lawsuit within 90 days of receiving the Right to Sue letter, as required by 42 U.S.C.S. § 2000e–(5)(f)(1) (West 1994). Defendant points out that the suit was filed on January 3, 1997, whereas the Right to Sue letter was dated and mailed on September 27, 1996, 98 days prior to the date of filing. Allowing for several days in the mail, Defendant contends that Plaintiff's filing was still past the deadline. Plaintiff responds that she moved after initiating her EEOC action, and that she did not receive the letter at her new address until October 6, 1996. Thus her filing on January 3, 1997, was within the deadline. Plaintiff submits an affidavit and a copy of an EEOC envelope bearing an October 5, 1996 postmark. (Pl.'s Resp. Ex. A, B.) This shows that Plaintiff received the Right to Sue letter after October 5, 1996, and that she therefore filed this suit within the 90 day

period.[1]

## B. Insufficiency of process pursuant to Federal Rule of Civil Procedure 12(b)(5).

Defendant next argues that the Complaint should be dismissed for insufficient service of process pursuant to Fed.R.Civ.P. 12(b)(5). Defendant claims that the Summons and Complaint were received through certified mail, which does not suffice as service. Furthermore, Defendant did not agree to waive service. Plaintiff responds that, in addition to sending the Summons and Complaint by certified mail, she effected personal service on Defendant's legal department, and she attaches the Return of Service to her Response. (Pl.'s Resp. Ex. F.) In its Reply Memorandum of Law, Defendant does not challenge Plaintiff's evidence that the Summons and Complaint were properly served.

## C. Lack of jurisdiction pursuant to Rule 12(b)(1) for failure to exhaust administrative procedures.

■ Finally, Defendant argues that the Court should dismiss Counts II and III of the Complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of jurisdiction because Plaintiff has failed to exhaust administrative remedies. It is well established that a plaintiff seeking relief for alleged employment discrimination must first subject her claim to the EEOC's administrative process. *See* 42 U.S.C.A. § 2000e–5; *Brennan v. National Telephone Directory Corp.*, 881 F.Supp. 986, 993 (E.D.Pa.1995).

Count II of the Complaint alleges the following:

31. Plaintiff ... avers that at the time defendant [re]hired plaintiff ... on September 11, 1995, it knew or had reason to know that the position would be eliminated in January, 1997.

32. Plaintiff avers ... that defendant's decision to [re]hire plaintiff ... was made for the sole purpose of persuading plaintiff to withdraw her Charge of Discrimination with the EEOC and/or to mitigate damages.

33. Plaintiff ... avers that defendant's decision to [re]hire her ... when it knew or should have known that the position was to be eliminated in January, 1997 was in retaliation for plaintiff's involvement in EEOC protected activity.

(Compl.¶¶ 31–33.) Count III lumps Plaintiff's rehiring and layoff claim with her "nonselection" after the first layoff as part of Defendant's discrimination against her. Plaintiff alleges that her "nonselection and retaliatory layoff [were] based solely on her race and contrary to her employment agreement, personnel policy and termination process of defendant." (Compl. P 39.) If Count III were dismissed, Plaintiff's "nonselection" claim would survive in Count I of the Complaint. Therefore, it is the claim of a "retaliatory layoff" that causes Defendant to seek dismissal of Count III as well as of Count II. Defendant refers to the issue as "discriminatory hiring," and argues that because Plaintiff did not raise the issue in her EEOC Charge, she cannot raise it here.

In response, Plaintiff provides documentation in the form of an exchange of letters, that took place shortly before the Right to Sue letter issued, between her attorney and the EEOC investigator handling her case. She contends the letters demonstrate that she did raise the claim before the EEOC. (Pl.'s Resp. Ex. C, D.) Both sides rely on these letters to prove their respective points. Following a "Predetermination Interview," Plaintiff's counsel wrote to the EEOC investigator on September 16, 1996:

Your Predetermination Interview raised several "strawmen" defenses. Paragraphs 3, 4 and 5 discuss settlement, rehiring and

---

1. Defendant points out that October 6, 1996, was a Sunday and that Plaintiff therefore could not have received the letter on the 6th. Based on this error, Defendant contends that Plaintiff's affidavit is "factually incorrect and inherently unreliable." (Deft.'s Reply Mem. at 1 n.1.) An error of a day or two in fixing the date of a past event is a common occurrence, and the phrase "on or about" before the date is frequently used to prevent such an error. Plaintiff did not use that language, but she submitted the postmarked envelope, which shows that the date she chose was not more than a day or two off the mark. Such an error does not make Plaintiff's affidavit "inherently unreliable."

issues which are neither material nor relevant to the issue of damages whether Respondent discriminated against Charging Party. Each and every purported fact contained in these paragraphs occurred months after Charging Party's non-selection. Thus, these alleged facts have no legitimate bearing on the issues alleged by Charging Party. Nonetheless, I will briefly discuss the content of these paragraphs.

. . .

In Paragraph 4 you indicate that Charging Party was rehired as a Secretary, in September, 1995. You failed to mention, however, that Charging Party was notified in January, 1996, that the position was going to be eliminated in December, 1996. We contend that Respondent knew the position was going to be eliminated at the time it was offered to Charging Party. This was a thinly veiled attempt by Respondent to accomplish indirectly what it could not achieve directly through settlement negotiations; that is, to lure Charging Party back into their employ in order to create some subsequent remedial evidence that it had no intent to discriminate.

(Pl.'s Resp.Ex. C.)

In response to this letter, the EEOC investigator wrote, in part, on September 24, 1996:

Finally, with respect to the allegation that Ms. Foust['s notification], subsequent to her rehire in September 1995, . . . that her current position was being eliminated in December, 1996, [shows that the rehiring] was simply a ploy on the part of the company to aid in their defense of this case, [that allegation,] without any substantive proof, is only an assumption.

(Pl.'s Resp.Ex. D.)[2]

▆ Plaintiff uses this exchange of letters to show that she brought the question of rehiring to the attention of the EEOC and that, consequently, she may raise it in her Complaint. Defendant contends that Plaintiff's claim of "discriminatory hiring" was not preserved; although Plaintiff's counsel mentioned rehiring in the September 16, 1996,

letter, he never alleged that the rehiring was part of her Charge of Discrimination. To the contrary, argues Defendant, Plaintiff's counsel stated in his letter to the EEOC investigator that the rehiring did not come within the scope of his client's Charge of Discrimination.

Paragraphs 3, 4 and 5 discuss settlement, rehiring and issues which are neither material nor relevant to the issue of damages whether Respondent discriminated against Charging Party. Each and every purported fact contained in these paragraphs occurred months after Charging Party's non-selection. Thus, these alleged facts have no legitimate bearing on the issues alleged by Charging Party.

(Pl.'s Resp.Ex. C.) Defendant argues that this passage precludes Plaintiff from raising in this Court the issue of her rehiring. But Plaintiff's letter can also be seen as preserving the rehiring issue. In fact, the letter argues both that the rehiring was irrelevant to the Charge of Discrimination and that it was related to the Charge as a ploy to create false evidence of non-discrimination. I therefore conclude that the issue was preserved and the statement of Plaintiff's counsel's that the rehiring had no bearing on the Charge of Discrimination does not preclude Plaintiff from raising the issue before this Court. The question then becomes whether Plaintiff's allegations regarding rehiring in the Complaint, which are somewhat different from her allegations regarding rehiring in the letter to the EEOC investigator, come within the scope of the EEOC's investigation.

In *Howze v. Jones & Laughlin Steel Corp.*, 750 F.2d 1208 (3d Cir.1984), the United States Court of Appeals for the Third Circuit discusses the standard for determining whether a claim in a civil complaint is within the scope of the EEOC investigation:

Because the statutory scheme of Title VII stresses conciliation by the EEOC over formal adjudication, we recognize that there must be some limitation on the pre-

---

2. In the exchange of letters, both Plaintiff's counsel and the EEOC investigator state that Defendant notified Plaintiff that her position would be eliminated in December 1996. In her Com-

plaint, Plaintiff avers she was notified the position would be eliminated in January 1997. (Compl.¶ 24.)

sentation of new claims in the district court. This court has held, however, that the parameters of the civil action in the district court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination, including new acts which occurred during the pendency of proceedings before the Commission. *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394, 398–99 (3d Cir.1976), *cert. denied*, 429 U.S. 1041, 97 S.Ct. 741, 50 L.Ed.2d 753 (1977) (some citations omitted).

As in *Ostapowicz*, we believe that Howze's new retaliation claim "may fairly be considered [an] explanation[ ] of the original charge...." *Id., supra* at 399. Whether the actual EEOC investigation uncovered any evidence of retaliation is of no consequence.... [We have] rejected the view that an EEOC investigation sets an outer limit on the scope of the civil complaint. Rather, we [have] held that a district court may assume jurisdiction over additional charges if they are reasonably within the scope of the complainant's original charges and if a reasonable investigation by the EEOC would have encompassed the new claims.

*Howze*, 750 F.2d at 1212 (some citations omitted).

By this standard, the issue of whether Plaintiff's rehiring was retaliatory or discriminatory certainly looks to be within the scope of her claim in the September 16 letter that the rehiring was for the purpose of establishing "subsequent remedial evidence" that Defendant had no intention of discriminating. If the EEOC had investigated whether there was one improper motive for the rehiring (to establish evidence), its investigation would have included within its scope the presence of other improper motives relating to the Charge (retaliation and discrimination).

Defendant cites several cases in support of its argument that the allegation of discriminatory rehiring did not come within the scope of the Charge of Discrimination, but both of them are distinguishable from the instant case. In *Parsons v. City of Philadelphia*, 822 F.Supp. 1181 (E.D.Pa.1993), Blondell

Parsons, an African–American woman employed by a city agency, sued that agency, alleging that she had been discriminated against on the basis of race with regard to the terms, conditions and privileges of employment. She based this claim on the fact that she had assumed duties of the Director of the Philadelphia Alcohol Safety Program/NEXUS and had not been compensated for this additional work. *Id.* at 1182. The district court held that Ms. Parsons' additional civil claim, that she had been discriminated against by the agency's failure to promote her to the position of director of the program, was not within the scope of the EEOC charge. The court reasoned that nothing in the record indicated that the EEOC investigated "or had any reason to investigate a claim that plaintiff had been discriminated against by defendant's failure to promote her to the Director's position." *Parsons* is unlike the instant case in that, there, the additional charge would have required investigation of events not triggered by the first investigation, whereas in this case, the event (the rehiring) had been raised to the EEOC investigator. The additional allegation in the Complaint before this Court merely added other improper motives for the same event. It was therefore within the scope of the investigation because it could "reasonably be expected to grow out of the charge of discrimination." *Ostapowicz*, 541 F.2d at 399.

Defendant also cites *Shaver v. Corry Hiebert Corp.*, 936 F.Supp. 313 (W.D.Pa.1996), in which the court held that the plaintiff's charge of wrongful termination on the basis of age did not include within its scope a charge of improper failure to rehire or transfer on the basis of age. The court stated that "claims not presented to the EEOC must usually allege not only discrimination on the same basis, but the same type of discriminatory activity," *id.* at 319, and it cites as examples *Parsons; Sandom v. Travelers Mortg. Services, Inc.*, 752 F.Supp. 1240, 1247 (D.N.J.1990) (claim of sexual harassment not preserved by EEOC charges alleging other forms of gender-based discrimination); and *Zalewski v. M.A.R.S. Enterprises, Ltd;*, 561 F.Supp. 601 (D.Del.1982) (claim of

quid pro quo harassment not preserved by EEOC charge alleging termination on basis of gender.) The *Shaver* court quotes *Sandom* as saying that claims not included in an EEOC charge but permitted by the district court typically either arise during the pendency of the EEOC investigation or are closely related to conduct alleged in the charge and are considered explanations of the charge. *Shaver*, 936 F.Supp. at 319 (citing *Sandom*, 752 F.Supp. at 1247.) In the instant case, while the claim of discriminatory rehiring is neither closely related to the claim of failure to hire nor an explanation of that failure, it did arise during the pendency of the investigation, it was brought to the attention of the EEOC investigator before the Right to Sue letter issued, and the investigator responded to it before the letter issued. Therefore, it was preserved and properly raised in Plaintiff's Complaint.

Defendant argues that, because Plaintiff's counsel asserted that the rehiring had no bearing on plaintiff's Charge of Discrimination, the EEOC had no reason to investigate it. As noted above, Plaintiff's letter argued both that the rehiring was irrelevant to the Charge and that it was related to it. The EEOC investigator responded in his letter to the latter position. He noted that there was no proof to support Plaintiff's contention that the offer of a position that was to last only 16 months was a ploy, but he implied that, with proof, it might have been relevant. His letter stated:

> Finally, with respect to the allegation that Ms. Foust['s notification], subsequent to her rehire in September 1995, . . . that her current position was being eliminated in December, 1996, [shows that the rehiring] was simply a ploy on the part of the company to aid in their defense of this

case, [that allegation,] without any substantive proof, is only an assumption.

(Pl.'s Response Ex. D.)

■ Finally, Defendant argues that the EEOC did not have a reasonable opportunity to investigate Plaintiff's claim of discriminatory rehiring because she raised that question "over seventeen months after the plaintiff first filed her EEOC Charge, and eleven days before the EEOC was to issue its ruling." (Def.'s Reply Mem. at 3 (emphasis omitted).) While the EEOC may generally issue a determination letter shortly after a pretermination interview, Defendant has cited no authority holding that EEOC must do so. It could have extended its investigation or conducted additional predetermination interviews or both after Plaintiff had raised the issue of rehiring.[3] There is no requirement that the EEOC issue its ruling within a particular time. The Third Circuit has stated that "the prime duty of the EEOC is to investigate and conciliate. We perceive no time limitation imposed by the Equal Employment Opportunities Act or the regulations of the EEOC by which a charge must be served and proceeded with by the Commission." *Internat'l Broth. of Elec. Workers, Local Union No. 5 v. EEOC*, 398 F.2d 248, 252 (3d Cir.1968), *cert. denied*, 393 U.S. 1021, 89 S.Ct. 628, 21 L.Ed.2d 565 (1969). In *Ostapowicz*, the Third Circuit stated that the scope of the charge includes "new acts which occurred during the pendency of proceedings before the Commission." *Ostapowicz*, 541 F.2d at 398–99. In this case, the proceedings were pending when the rehiring occurred, and Plaintiff brought it to the attention of the EEOC investigator while they were still pending, albeit at a late stage in the proceedings.[4] Therefore, the issue of retaliatory or

3. In *EEOC v. Mallinckrodt, Inc.*, No. 97–1197 C(1), 1980 WL 124 (E.D.Mo. March 6, 1980), in the course of investigating a Charge of Discrimination filed on April 7, 1978, the EEOC held a series of predetermination interviews over a period of five months. Some were additional interviews with the same parties. *Id.* at *3.

4. Defendant argues that if it had truly made Plaintiff the offer of another position to convince her to withdraw her discrimination charge, it

would not have told her that the position was going to be eliminated while the EEOC investigation was still pending. (Def.'s Reply Mem. at 3.) However, if Defendant had informed Plaintiff that she was to be laid off only after the EEOC had completed its investigation, that might have suggested strongly that she was rehired for an improper motive, and that the motive was kept hidden during the investigation. Plaintiff might then have filed another Charge of Discrimination.

discriminatory rehiring is properly before this Court.

## IV.  CONCLUSION

Defendant has shown no legal deficiency in Plaintiff's Complaint and, therefore, no reason why Plaintiff should not be allowed to continue with her suit and present evidence in support of her allegations.  Accordingly, I will deny Defendant's Motion to Dismiss.